Fidel Angel **HERNANDEZ– BARRERA**, Petitioner,

v.

John **ASHCROFT**, Attorney General, Respondent.

No. 02–2513.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 2003.

Decided June 9, 2004.

10

Nancy J. Kelly, with whom John Willshire and Harvard Immigration and Refugee Clinic of Greater Boston Legal Services, were on brief for petitioner.

Brenda M. O'Malley, Trial Attorney, Office of Immigration Litigation, with whom Peter D. Keisler, Assistant Attorney General, and Linda S. Wernery, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

Before LIPEZ, Circuit Judge,
CAMPBELL and STAHL, Senior Circuit Judges.

LIPEZ, Circuit Judge.

Fidel Angel Hernandez–Barrera petitions for relief from a decision by the Board of Immigration Appeals (BIA or the Board), denying his claims for asylum, withholding of deportation, and relief under the United Nations Convention Against Torture (CAT)[1]. The Attorney General asserts that jurisdiction over this appeal is barred by Section 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (September 30, 1996). IIRIRA § 309(c)(4)(G) states that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [certain enumerated sections of the statute]." Although Hernandez–Barrera admitted to committing several covered offenses in the context of the IJ's determination of his eligibility for asylum or

1. The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, § 2242, 112 Stat. 2681–761 (codified at 8 U.S.C. § 1231 (2002)). Article 3 of the Convention prevents state parties from returning individuals to other states where there are substantial grounds for believing they will be subject to torture.

withholding of deportation, his final order of deportation was not based on those offenses. Therefore, under our holding in *Choeum v. INS*, 129 F.3d 29 (1st Cir. 1997), IIRIRA § 309(c)(4)(G) does not apply to bar jurisdiction over his appeal.

Turning to the merits of the petition, we find that the BIA erred by failing to make a finding as to past persecution in evaluating Hernandez–Barrera's asylum claim. Assuming arguendo that the Board did make a finding of past persecution, it still erred by misallocating the burden of proof on changed conditions in the country and by failing to engage in an individualized analysis of the impact of any changed circumstances on Hernandez–Barrera's presumed well-founded fear. In light of these legal errors, we remand to the BIA for further proceedings.[2]

## I.

Fidel Angel Hernandez–Barrera, a national and citizen of El Salvador, illegally entered the United States on August 12, 1987.[3] On August 13, 1987, the Immigration and Nationality Service (INS) served Hernandez–Barrera with an Order to Show Cause (OSC) charging deportability under former section 241(a)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(2)(1998), for entering the United States without inspection. Appearing before an Immigration Judge (IJ), Hernandez–Barrera conceded deportability under INA § 241(a)(2) and applied for asylum, withholding of deportation, and

voluntary departure. On December 11, 1987, the IJ found Hernandez–Barrera deportable as charged, denied his applications for relief, and ordered him deported. Hernandez–Barrera appealed the IJ's decision to the BIA.

On January 14, 1991, the Board issued an order indefinitely continuing Hernandez–Barrera's appeal to allow him to apply for Temporary Protected Status (TPS) under Sections 302 and 303 of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5030–38, and to pursue relief under the settlement agreement reached in *American Baptist Churches v. Thornburgh*, 760 F.Supp. 796 (N.D.Cal.1991) ("ABC settlement agreement").[4] On June 21, 1991, Hernandez–Barrera registered for benefits under the ABC settlement agreement, requesting a new asylum interview and a decision by the INS on the merits of his asylum claim.

On April 6, 2000, the INS filed a motion to reinstate Hernandez–Barrera's appeal with the BIA, claiming that TPS status for El Salvadorians had expired on June 30, 1992. It argued that the IJ properly denied Hernandez–Barrera's claims for asylum, withholding of deportation, and voluntary departure and urged the BIA to affirm that decision. The INS also stated that Hernandez–Barrera was statutorily ineligible for voluntary departure because he had been convicted of multiple criminal offenses, and it submitted records of the convictions to the Board.

**2.** The Attorney General has been substituted for the INS as respondent. *See Fesseha v. Ashcroft*, 333 F.3d 13, 18 n. 5 (1st Cir.2003); 8 U.S.C. § 1252(b)(3)(A)(2000).

**3.** Hernandez–Barrera first entered the United States in the summer of 1985, also without inspection. He left the United States for Canada in May 1987 but returned again to the United States in August 1987.

**4.** The ABC settlement agreement arose out of a class action suit that was filed on behalf of nationals of El Salvador and Guatemala. It provides amnesty for Salvadorians and Guatemalans present in the United States as of September 19, 1990 and October 1, 1990, respectively.

Hernandez–Barrera opposed the motion to reinstate proceedings, arguing that, pursuant to the terms of the ABC settlement agreement, the Board was not permitted to proceed with his case until the INS afforded him a new interview and de novo adjudication of his asylum claim. He also argued that the INS's evidence regarding his criminal convictions was inadmissible.

On December 11, 2000, the INS filed a second motion to reinstate Hernandez–Barrera's deportation proceedings. This motion reiterated the INS's position that Hernandez–Barrera was ineligible for TPS because that status had expired for El Salvadorians. In addition, it claimed that Hernandez–Barrera was ineligible for benefits under the ABC settlement agreement because he had been convicted of two aggravated felony offenses: larceny of property, and assault and battery.[5] It submitted supporting conviction records to the Board. The INS requested that proceedings be reinstated and remanded to the IJ for "[a] determination of respondent's deportability as an aggravated felon ... and a determination of whether he is thereby barred from asylum and voluntary departure."

On January 9, 2001, the BIA granted the INS's motion to reinstate proceedings. It noted that the INS had asserted that Hernandez–Barrera had been convicted of multiple criminal offenses, including two aggravated felonies, and had submitted conviction documents that appeared to relate to Hernandez–Barrera. The Board stated that individuals convicted of an aggravated felony are statutorily ineligible for asylum or voluntary departure, and are not entitled to a de novo asylum adjudication under the ABC settlement agreement.

The BIA granted the INS's motion to reinstate the appeal and remanded the case to the IJ for further proceedings to determine Hernandez–Barrera's eligibility for asylum and voluntary departure. Importantly for the analysis in this case, the Board did not instruct the IJ to determine whether Hernandez–Barrera was deportable as an aggravated felon.

At a hearing before a second IJ, Hernandez–Barrera admitted that he had been convicted of assault and battery, receiving stolen property, and larceny of less than $250. He also conceded that the INA defined the three crimes as aggravated felonies and that because of those offenses, he was no longer eligible for relief under the ABC settlement agreement. Hernandez–Barrera argued, however, that the mandatory bar to asylum for individuals convicted of aggravated felonies did not apply to him because he had filed his asylum claim in 1987, when the mandatory bar for aggravated felonies was not yet in effect. He also filed a request for relief under the CAT, and the IJ permitted supplemental testimony from Hernandez–Barrera and supplemental briefing from both parties on the CAT issue.

In support of his claims for asylum, withholding of deportation, and relief under the CAT, Hernandez–Barrera testified that he was forcibly conscripted into the El Salvadorian military in January 1984, when he was sixteen years old, to fight in the country's 12–year civil war. He stated that he did not support either the government or the guerrillas, and was morally opposed to killing, but could not leave the army because he would have been punished and branded a guerrilla. During the 11–12 months that he spent in the military,

---

**5.** Under the INA, a crime of violence for which the term of imprisonment is at least one year or a theft offense for which the term of imprisonment is at least one year constitutes an "aggravated felony." INA § 101(a)(43)(F)(G), 8 U.S.C. § 1101(a)(43)(F), (G).

Hernandez–Barrera witnessed frequent killing and torture of prisoners and civilians by his commanders and fellow soldiers. When he refused to kill unarmed prisoners because of his moral and religious convictions, he was subjected to abuse, torture, and threats of death. On one occasion, he was hung upside down from his legs and swung from side to side; on another, his commanders threw him head first into a wall. As a consequence of refusing a direct order to shoot an unarmed prisoner, he was beaten severely, called a "faggot" and "coward," and tortured in a basement room reserved for that purpose. He was then held in a small cell for approximately twenty days, during which time he was continuously beaten, deprived of sleep and food, and subjected to water torture and other forms of abuse.

In December 1984, he was shot in the leg during a battle. After being treated for the wound, he was ordered to return to combat. He did not want to return because he was physically weak and could not run on his injured leg and because he morally objected to the actions of the military and did not wish to participate in the killings. At the same time, he feared that he would be imprisoned or tortured for refusing to fight and that he would be branded a guerrilla. Consequently, Hernandez–Barrera deserted the army and fled the country by plane to Mexico about a month later. He entered the United States by foot in 1985.

On April 17, 2002, in an oral opinion issued from the bench, the IJ determined that Hernandez–Barrera had been convicted of three aggravated felonies, including assault and battery, for which he received a sentence of one year; receiving stolen property, for which he received a suspended sentence of two and a half years; and larceny of less than $250, for which he received a sentence of one year. He fur-ther determined that the changes in the law subsequent to Hernandez–Barrera's initial application for asylum applied retroactively to his asylum claim. The IJ therefore concluded that Hernandez–Barrera was ineligible for asylum because he had been convicted of three aggravated felony offenses.

The IJ found, however, that because none of Hernandez–Barrera's crimes constituted a "particularly serious crime" under the INA and because he had not been sentenced to an aggregate of five years in prison for the aggravated felony convictions, Hernandez–Barrera remained eligible to apply for withholding of deportation and relief under the CAT. The IJ nonetheless concluded that Hernandez–Barrera failed to establish that it was more likely than not that he would be persecuted or tortured in El Salvador on account of his activities in the military, which took place more than seventeen years ago:

> The Court concludes the war is long since over, both the guerillas and the government officials are working hand in hand in the government. The offense that the respondent [committed] when he was only 16 years old the Court concludes is minor. There's been nothing provided in the record that states that people who have been in the United States for a substantial periods [sic] of time at this point are subject to any kind of unequitable [sic] treatment upon their return. Given the fact this took place when he was very young and this was 17 years ago, the war itself is long since over, everybody is in a reconstruction mode, the Court concludes that it's unlikely that he'd be persecuted and/or tortured.

Therefore, the IJ held that Hernandez–Barrera failed to meet his burden of establishing eligibility for withholding of depor-

tation and relief under the CAT, and ordered him deported to El Salvador.

On October 25, 2002, the BIA issued a per curiam opinion affirming the IJ's decision. The Board noted that it had "considered the respondent's argument that the IJ incorrectly denied him asylum consideration on account of his conviction for an aggravated felony offense ... [because he] initially applied for asylum in 1987, and therefore should be considered for that form of relief from removal notwithstanding the subsequent changes in the law." It did not decide whether Hernandez–Barrera's felony convictions precluded him from consideration for asylum but instead addressed the merits of his asylum claim, concluding that

> the respondent did not establish that he has a well-founded fear of persecution if he returns to El Salvador even had the Immigration Judge allowed him consideration for asylum. The Immigration Judge's reasons for denying the respondent withholding of removal convince the Board that the respondent did not satisfy the burden of proof for a grant of asylum.

Thus, relying on the IJ's reasons for denying Hernandez–Barrera's application for withholding of deportation [6] and relief under the CAT, the BIA affirmed the IJ's decision and dismissed Hernandez–Barrera's appeal. The respondent's aggravated felony convictions played no role in the BIA's decision. Hernandez–Barrera petitions this court for review.

## II.

■ We first consider the question of whether we have jurisdiction to review the BIA's decision denying Hernandez–Barrera's requests for asylum, withholding of deportation, and relief under the CAT. The Attorney General argues that IIRIRA § 309(c)(4)(G) operates to deprive this court of jurisdiction where an alien admits to committing an aggravated felony but the crime was not the basis of the deportation order. Although we have not yet had occasion to address the relevance of an alien's admission under IIRIRA § 309(c)(4)(G), circuit precedent governs the resolution of this jurisdictional issue.

Section 309(c)(4) of IIRIRA contains transitional rules for judicial review that apply to cases in which deportation or exclusion proceedings were commenced prior to April 1, 1997, and in which final orders of deportation and exclusion were entered after October 30, 1996. *See Prado v. Reno*, 198 F.3d 286, 288 n. 2 (1st Cir. 1999). Because Hernandez–Barrera was placed in deportation proceedings in August 1987 and the BIA's final decision was not entered until October 25, 2002, IIRIRA § 309(c) applies to this petition. Section 309(c)(4)(G) provides that

> in the case ... in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act, ... there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [certain enumerated sections].

The Attorney General claims that Hernandez–Barrera is deportable by reason of having committed three aggravated felonies under INA § 241(a)(2)(A)(iii), one of the sections listed in IIRIRA

---

**6.** Under the current version of the INA, the return of an alien to his country of origin is called "removal" rather than "deportation." Thus, Hernandez–Barrera formally appeals from a final order of removal, although that order was the outcome of reinstated deportation proceedings. For the sake of consistency, we refer to "deportation" and "withholding of deportation" throughout this opinion.

§ 309(c)(4)(G), and that we therefore have no jurisdiction to review the BIA's decision affirming the IJ's deportation order and denying Hernandez–Barrera's petition for asylum, withholding of deportation, and relief under the CAT.

We clearly would lack jurisdiction in this case if the INS had charged Hernandez–Barrera with deportability because of his aggravated felonies and those offenses had provided the basis for the Board's final deportation order. However, the INS charged Hernandez–Barrera with deportability on the non-criminal ground of entering the United States without inspection, and Hernandez–Barrera's later convictions did not provide a basis for the BIA's final decision of October 25, 2002. The Attorney General insists, however, that because Hernandez–Barrera admitted, in the context of the IJ's adjudication of his asylum claim, that he had been convicted of three aggravated felonies, there is no issue of fact as to whether he is deportable by reason of having committed a covered offense. The Attorney General argues that Hernandez–Barrera's admission to having committed an aggravated felony or other disqualifying crime renders him "deportable by reason of" having committed that offense within the meaning of the statute, thereby depriving this court of jurisdiction. We disagree.

In *Choeum v. INS*, 129 F.3d 29 (1st Cir.1997), we considered a similar jurisdiction-stripping provision contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214.[7] In that case, an alien appeal-

ed a deportation order based on a kidnaping conviction that did not fall under one of the then-applicable jurisdiction-stripping categories. The provision in force at that time provided that "[a]ny final order of deportation against an alien who is deportable by reason of having committed [an enumerated crime] shall not be subject to review by any court." AEDPA § 440(a).[8] The INS argued that we lacked jurisdiction because the petitioner also had been convicted of a burglary, which it said was a firearms offense (one of the categories of offenses covered by the jurisdiction-stripping provision). We did not agree. As we explained:

> According to the INS, for purposes of jurisdiction, aliens "deportable by reason of" having committed firearms offenses are not only those aliens *who have been ordered deported* for firearms offenses, but also those aliens who *could be* deported for that reason. As a matter of statutory construction, that argument is somewhat illogical: The contested phrase comes from Section 440(a) of AEDPA, a statutory section concerned with final orders of deportation. The section therefore applies, by its very terms, only to aliens who have actually been adjudged deportable. It is therefore highly doubtful that, in that context, Congress meant "deportable by reason of" to mean, as the INS would have it, "potentially susceptible to being deported by reason of . . ."

*Id.* at 38 (emphasis in the original). We held that "the INS cannot, consistent with due process and the statutory and regulatory requirements governing its own pro-

---

**7.** The Antiterrorism and Effective Death Penalty Act of 1996 was enacted on April 24, 1996, six months before Congress enacted IIRIRA.

**8.** AEDPA § 440(a) is equivalent to § 309(c)(4)(G) in terms of its essential language and purpose. *See Lemus–Rodriguez v.*

*Ashcroft,* 350 F.3d 652, 654 (7th Cir.2003) (noting that the difference in the wording of these jurisdiction-stripping provisions is immaterial). Importantly, both AEDPA § 440(a) and IIRIRA § 309(c)(4)(G) deal exclusively with final orders of exclusion or deportation.

ceedings, substitute new grounds for deportation at this stage in the proceedings, solely for the purposes of depriving the federal courts of jurisdiction." *Id.* at 40. Thus, we unequivocally rejected the INS's argument that aliens "deportable by reason of" include not only aliens who have been ordered deported for covered offenses but also aliens who *potentially* could be deported for that offense. *See also Yousefi v. INS,* 260 F.3d 318, 325 (4th Cir.2001) (per curiam) (reaching the same conclusion as *Choeum* with respect to § 309(c)(4)(G)); *see also* National Lawyers' Guild, *Immigration Law and Crimes* § 4:40 & n. 7 (citing *Choeum* and *Yousefi* for the proposition that " § 309(c)(4)(G) does not apply to preclude federal appellate jurisdiction to review a final deportation order unless the respondent was ordered deported, at least in part, on the basis of a listed criminal conviction"); *but see Lopez–Elias v. Reno,* 209 F.3d 788, 793 (5th Cir.2000) ("[S]o long as the alien in fact is removable for committing an aggravated felony, this court has no jurisdiction irrespective of whether the INS originally sought removal for that reason."); *Fernandez–Bernal v. Attorney General,* 257 F.3d 1304, 1310 (11th Cir.2001) (same).

The INS originally charged Hernandez–Barrera with deportability for entering the United States without inspection. On December 11, 1987, an IJ found Hernandez–Barrera deportable "on the basis of the charge contained in the Order to Show Cause." When, thirteen years later, the INS filed two motions to reinstate Hernandez–Barrera's deportation proceedings, it did not amend the Order to Show Cause to charge him with deportability for having committed an aggravated felony. The Service's second motion did ask the BIA to remand the case to the IJ for a determination of Hernandez–Barrera's deportability as an aggravated felon as well as his ineligibility for asylum and voluntary depar-

ture. However, in remanding to the IJ for further proceedings, the Board addressed only the latter issue, granting the INS's "request[ ] that we reinstate proceedings and remand the case in order to determine whether the respondent is eligible for asylum or voluntary departure."

In accord with the BIA's order, the IJ considered only Hernandez–Barrera's claims for relief from the original order of deportation. It accepted the underlying grounds for that order (entering the United States without inspection) and did not address whether new grounds for deportation might exist based on Hernandez–Barrera's felony convictions. Nor did the INS raise the issue of the underlying basis for deportation during the removal hearings; as the INS attorney told the IJ, Hernandez–Barrera's case had been "remanded in order to determine whether [Hernandez–Barrera was] eligible for asylum or voluntary departure according to the language of the [BIA's] decision." Thus, although the IJ found that Hernandez–Barrera had been convicted of several aggravated felonies, those findings related only to his eligibility for relief from deportation, not to the basis for deportation. The IJ concluded that Hernandez–Barrera was ineligible for asylum, withholding of deportation, voluntary departure, and relief under the CAT, and ordered him "removed from the United States to El Salvador." The BIA affirmed the IJ's decision and dismissed Hernandez–Barrera's appeal, finding him ineligible for relief from the 1987 deportation order. Like the IJ, the BIA did not order Hernandez–Barrera deported for having committed an aggravated felony. Therefore, in light of our holding in *Choeum*, Hernandez–Barrera is not "deportable by reason of" the aggravated felonies of which he was convicted because his convictions were not a basis for the final

order of deportation now subject to his petition for review.

The Attorney General argues, however, that *Choeum* does not control in this case. It points instead to our decision in *Ruckbi v. INS*, 159 F.3d 18 (1st Cir.1998), where the Attorney General says we held that IIRIRA divested this court of jurisdiction because the alien "admitted the essential elements" of an offense covered by IIRIRA § 309(c)(4)(G), even though he was not charged with deportability or inadmissibility on account of that offense. The Attorney General suggests that the critical distinction between *Ruckbi* and our earlier holding in *Choeum* was an admission by Ruckbi that saved the court of appeals from compiling a record and adjudicating in the first instance whether or not the offense was an aggravated felony, or other disqualifying crime. In *Choeum*, by contrast, the IJ never decided whether Choeum had been convicted of a crime that was covered by the jurisdiction-stripping provision, and that factual issue was disputed on appeal. *Choeum*, 129 F.3d at 40 (noting that "it is not the institutional role of this court to serve as a fact-finding body on issues of first impression" in determining whether an alien had committed a crime for which he or she could be deported). Thus, the Attorney General insists that "because Hernandez–Barrera admitted to having been convicted of three aggravated felony offenses at his deportation hearing, the judicial review bar of IIRIRA section 309(c)(4)(G) applies to his case."

The Attorney General misperceives the relevance of *Ruckbi* to this case. Decided one year after *Choeum*, *Ruckbi* involved a petition for review of an alien who had been charged with deportability on the non-criminal basis of overstaying his visa. Appearing before an IJ, he conceded deportability on that ground but sought adjustment of status to permanent residence.

To be eligible for adjustment of status, an alien must be admissible to the United States, 8 U.S.C. § 1255(a); therefore, he or she must not have committed any crimes that render an alien statutorily inadmissible. Ruckbi's criminal record included 36 charges. Although he had not been convicted of any of them, he admitted during cross examination that he had committed the essential elements of several of the crimes with which he had been charged. The IJ therefore found Ruckbi inadmissible and ineligible for adjustment of status. Ruckbi appealed the decision to the BIA and then petitioned this court for review.

We concluded that we lacked jurisdiction to review the deportation order under IIRIRA § 309(c)(4)(G). After quoting the provision, we explained:

> Section 309(c)(4)(G) states: "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2)...." IIRIRA § 309(c)(4)(G). Because Ruckbi admitted the commission of the essential elements of crimes covered by section 212(a)(2), this court is precluded by the plain language of section 309(c)(4)(G) from reviewing his claims. *See id.* The section states that "there shall be no appeal," a clear reference to the courts of appeals.

*Ruckbi*, 159 F.3d at 21.

We stated that "as a result of the[ ] admissions, the IJ found Ruckbi *inadmissible* under § 212(a)(2)(A)(i)(I) of the Act and thus statutorily ineligible for adjustment of status relief." *Id.* at 20 (emphasis added). As noted above, § 309(c)(4)(G) bars appeals from final orders "in the case of an alien who is inadmissible ... by reason of having committed [a covered criminal offense]" as well as in the case of an alien who is deportable on that basis.

Ruckbi sought review of the IJ's determination that he was *inadmissible* and ineligible for adjustment of status, not from an order of deportation that was unrelated to his commission of a covered crime. Because Ruckbi admitted to the commission of acts that constituted elements of crimes covered by § 212(a)(2), the IJ found him inadmissible, and there could be no appellate review of that final decision of inadmissibility. By contrast, because Hernandez–Barrera admitted to the commission of three aggravated felonies, the IJ found that he was ineligible for asylum, a conclusion that did not require the determination of his deportability or inadmissibility. Neither the IJ nor the BIA determined that Hernandez–Barrera was inadmissible or deportable "by reason of" having committed those crimes.

■ Thus, the final order of deportation that Hernandez–Barrera asks us to review was not based, even in part, on his commission of an aggravated felony. Like AEDPA § 440(a), IIRIRA § 309(c)(4)(G) deals exclusively with final orders of exclusion or deportation. Like the jurisdiction-stripping provision at issue in *Choeum*, the plain language of § 309(c)(4)(G) does not preclude judicial review of a final order of deportation or exclusion that is not "by reason of" a covered criminal offense, even where the alien is susceptible to being deported or excluded by reason of such an offense. Consequently, *Choeum's* interpretation of the phrase "deportable by reason of" governs here. In its final judgment affirming the IJ's order of deportation and denial of relief from deportation, the BIA did not hold that Hernandez–Barrera was excludable by reason of a covered crime, as was the case in *Ruckbi*. It did hold that Hernandez–Barrera was deportable by reason of a non-covered vio-

lation, as was the case in *Choeum*. Therefore, this case is governed by *Choeum*, not *Ruckbi*, and we have jurisdiction to consider Hernandez–Barrera's petition for review.

## III.

■ We must uphold the BIA's determination if it is " 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (internal quotation marks omitted). A court may reverse only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Id.; see also Quevedo v. Ashcroft*, 336 F.3d 39, 43 (1st Cir.2003) (internal quotation marks omitted). We review the BIA's conclusions of law de novo, "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." *Manzoor v. INS*, 254 F.3d 342, 346 (1st Cir.2001). Where the BIA deferred to or adopted the IJ's reasons for denying Hernandez–Barrera's claims, we review those portions of the IJ's decision as part of the final decision of the BIA. *See Albathani v. INS*, 318 F.3d 365, 373 (1st Cir.2003).

■ In this case, the BIA affirmed the decision of the IJ denying Hernandez–Barrera asylum, withholding of deportation, and relief under the CAT. However, whereas the IJ had concluded that Hernandez–Barrera was ineligible for asylum on account of his conviction for an aggravated felony offense, the BIA considered his asylum claim and rejected it on the merits.[9] In doing so, it stated that "the

9. The BIA did not decide whether Hernandez–Barrera is ineligible for asylum under

statutes retroactively applied to his 1987 claim, nor does the government advance this

respondent did not establish that he has a well-founded fear of persecution if he returns to El Salvador" and that "[t]he Immigration Judge's reasons for denying the respondent withholding of removal convince the Board that the respondent did not satisfy his burden of proof for a grant of asylum."[10] We therefore begin our review by considering the BIA's decision denying Hernandez–Barrera's claim for asylum together with those portions of the IJ's opinion that discuss its reasons for denying withholding of deportation.

█ The petitioner bears the burden of establishing eligibility for asylum by proving that he or she qualifies as a refugee. 8 U.S.C. § 1158(b)(1)(2002); 8 C.F.R. § 208.13(a). A petitioner can meet this burden in one of two ways: "1) by demonstrating past persecution, thus creating a presumption of a well-founded fear of persecution; or 2) by demonstrating a well-founded fear of persecution." *Yatskin,* 255 F.3d at 9 (citing 8 C.F.R. § 208.13(b)). To establish past persecution, an applicant must demonstrate that he or she has suffered persecution on account of one of

enumerated statutory grounds: race, religion, nationality, membership in a social group, or political opinion. 8 C.F.R. § 208.13(b)(1). To prove a well-founded fear of future persecution, applicants "can either offer specific proof, or they can claim the benefit of a regulatory presumption based on proof of past persecution." *Quevedo,* 336 F.3d at 44; *see* 8 C.F.R. § 208.13(b)(1).

█ Thus a determination of past persecution triggers a presumption that the applicant has a well-founded fear of future persecution and provisionally establishes his or her eligibility for asylum. 8 C.F.R. § 208.13(b)(1). The burden then shifts to the Attorney General to demonstrate by a preponderance of the evidence either: 1) that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality," or 2) that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." *Id.*

argument on appeal. Therefore, we do not consider whether individuals who applied for asylum prior to November 29, 1990 remain eligible for asylum notwithstanding an aggravated felony conviction. *See Yatskin v. INS,* 255 F.3d 5, 9 (1st Cir.2001) ("[A] reviewing court should judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court.").

10. The standard for establishing eligibility for withholding of deportation is more difficult to meet than the asylum standard, requiring that the alien present "evidence establishing that it is more likely than not that the alien would be subject to persecution on one of the specified grounds." *INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Thus, an alien who fails to meet the more stringent withholding standard is not necessarily ineligible for asylum. The IJ ac-

knowledged the significance of these different standards when it suggested during the deportation proceedings that if Hernandez–Barrera's asylum claim had not been precluded by his felony convictions, he may well have established eligibility for asylum:

Now let me say this, I must say there are some compelling elements of this story, more so though for asylum than withholding.:... [W]hat he had to say fits much more nicely into the world of asylum which I've already made a ruling on. So does he have a well-founded fear based on everything he's been through, maybe.

Although the BIA relied on the IJ's reasons for denying withholding of deportation, it went further than the IJ, concluding that Hernandez–Barrera not only had a less than fifty percent chance of being subject to persecution, but also that he had no well-founded fear of persecution if returned to El Salvador.

§§ 208.13(b)(1)(i)(A)-(B).[11]

 Although past persecution triggers a regulatory presumption that an applicant is entitled to withholding of deportation as well as asylum, neither the BIA nor the IJ made any finding at all that Hernandez–Barrera failed to prove past persecution as an independent ground for a grant of asylum or withholding of deportation. The IJ's oral opinion denying Hernandez–Barrera's claim for withholding of deportation made no finding as to past persecution. The Board simply stated that "the respondent did not establish that he has a well-founded fear of persecution if he returns to El Salvador" and that "the [IJ's] reasons for denying the respondent withholding of removal convince the Board that the respondent did not satisfy his burden of proof for a grant of asylum."

As we have noted, the BIA's finding that Hernandez–Barrera "did not establish that he has a well-founded fear of persecution" is insufficient to demonstrate his ineligibility for a grant of asylum. A determination of ineligibility must be based as well upon a determination that the applicant did not establish past persecution or, if he did establish past persecution, that the INS successfully overcame the regulatory presumption of future persecution that automatically arises from the past persecution. As we have previously observed: "[t]he absence of reasoned discussion of past persecution undercuts any meaningful review of the [agency's] fear of future persecution finding, because we do not know whether [the applicant] should have had the benefit of the regulatory presumption of fear of persecution based on prior events." *El*

*Moraghy v. Ashcroft,* 331 F.3d 195, 204–05 (1st Cir.2003) (citing 8 C.F.R. § 208.13(b)(1)).

 It is not the role of this court to determine in the first instance whether Hernandez–Barrera met his burden of establishing past persecution. *See Gailius v. INS,* 147 F.3d 34, 44 (1st Cir.1998). "If the BIA or the IJ has not ruled on an issue, either explicitly or implicitly, the respondent cannot ask us to uphold a decision on those grounds." *El Moraghy,* 331 F.3d at 205. Although we might overlook the BIA's error if, for example, the applicant presented no evidence of past persecution, Hernandez–Barrera presented specific evidence that he was persecuted in the past. As noted, he testified before the IJ that, as a forced recruit in the military, he was subjected to persecution and torture for his refusal to kill unarmed prisoners. He stated that his commanders hung him upside down by his legs, threw him head first into a wall, and submerged his head in water. He also claimed that he was beaten, imprisoned in a small cell for twenty days, denied food, deprived of sleep, and threatened with death. Therefore, we cannot conclude that the BIA's error was harmless. *See id.* (remand to the BIA was appropriate where the agency failed to address the issue of past persecution and the evidence did not "compel[ ] a conclusion either way").

The Attorney General argues, however, that the BIA applied the proper legal standard because "[a]lthough Hernandez–Barrera's experiences during the civil war may have risen to the level of persecution, the

---

11. Past persecution may trigger a similar presumption of eligibility for withholding of deportation (now called withholding of removal). Under the withholding standard, if the applicant is found to have "suffered past persecution in the proposed country of removal" on account of any of the statutorily enumerated grounds, the burdens shifts to the Attorney General to prove by a preponderance of the evidence that country conditions have changed to such an extent that "the applicant's life or freedom would not be threatened" on account of any of those grounds. 8 C.F.R. § 208.16(b)(1)(i).

Board concluded that the INS met its burden of showing that there has been a fundamental change in circumstances such that Hernandez–Barrera no longer has a well-founded fear of persecution and, therefore, was ineligible for asylum even if he had been persecuted in the past."

We agree with the Attorney General that, if an applicant establishes past persecution triggering the regulatory presumption of a well-founded fear of persecution, the INS may refute that presumption by establishing a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(i)(A). Moreover, we have excused as harmless error the BIA's failure to provide a reasoned basis for its finding of no past persecution where, taking the applicant's testimony as true, the BIA was justified in concluding that uncontested evidence of changed country conditions rebutted any presumption of a well-founded fear of future persecution. *Yatskin*, 255 F.3d at 9–11; *cf. El Moraghy*, 331 F.3d at 204–05 (holding that the BIA's failure to determine whether the applicant had proven past persecution precluded meaningful judicial review where the BIA made no finding concerning changed country conditions).

██ In this case, it is by no means clear that the BIA accepted Hernandez–Barrera's past persecution claim, applied a regulatory presumption of a well-founded fear of persecution, and concluded that evidence of changed circumstances refuted that presumption. However, even if we accept the Attorney General's premise that the BIA implicitly applied the regulatory presumption, we would be unable to uphold its decision on that ground because the BIA erroneously imposed part of the INS's burden of proof on Hernandez–Barrera. In determining that "the respondent did not establish that he has a well-found-

ed fear of persecution" and that "the [IJ's] reasons for denying the respondent withholding of removal convince the Board that the respondent did not satisfy his burden of proof for a grant of asylum," the Board clearly placed the burden on Hernandez–Barrera to prove that he had a well-founded fear of persecution. Thus, assuming that the BIA applied the regulatory presumption of a well-founded fear of future persecution, it improperly required Hernandez–Barrera to demonstrate that the presumption was not overcome by a fundamental change in circumstances such that he no longer had an objectively reasonable fear of persecution.

██ Although "the BIA's interpretation of the regulations is entitled to appropriate deference, .... [t]he INS cannot impose an evidentiary burden on the applicant that is not provided by and appears to be inconsistent with the statute or regulation." *Manzoor*, 254 F.3d at 348 (internal citation and quotation marks omitted); *see also Fergiste v. INS*, 138 F.3d 14, 18–19 (1st Cir.1998). As noted above, once an alien has established past persecution triggering a presumption of future persecution, the *agency*—not the alien—has the burden of establishing by a preponderance of the evidence that because of a fundamental change of circumstances, he or she no longer has a well-founded fear of persecution. 8 C.F.R. §§ 208.13(b)(1)(i)(A)-(B). In addition, even if the government proves changed circumstances, the applicant may be granted asylum based on past persecution alone if 1) the applicant has demonstrated compelling reasons for being unwilling or unable to return to his country of nationality or last habitual residence; or 2) the applicant has established that there is a reasonable possibility that he may suffer other serious harm on return to that country. 8 C.F.R. §§ 208.13(b)(1)(iii)(A)-(B). By allocating the burden of proof to

Hernandez–Barrera to show that changed circumstances had not overcome the presumption of future persecution, the Board erred as a matter of law. *See Manzoor*, 254 F.3d at 348 (holding that the BIA erred by requiring asylum applicant to prove that the threat of persecution in his home country was countrywide where agency regulations allocated to the INS the burden to show that the alien reasonably could avoid persecution by relocating to another part of the country).

■ In addition, the BIA's failure to engage in an individualized analysis of the impact of any changed circumstances on Hernandez–Barrera himself also constituted legal error. In relying on the IJ's reasons for denying withholding of deportation, the BIA based its determination of ineligibility for asylum on several factors: the war was long over and "everyone was in reconstruction mode"; Hernandez–Barrera's "offense" of desertion took place when he was only 16 years old; and there was no evidence presented demonstrating that individuals who have been in the United States for substantial periods of time are mistreated upon their return to El Salvador. The IJ's determination that the Salvadorian civil war had ended and substantial time had passed since Hernandez–Barrera's flight from El Salvador did not provide an adequate basis for concluding that the INS met its burden of producing evidence sufficient to overcome Hernandez–Barrera's presumed individual well-founded fear. As we have explained, "changes in country conditions must be shown to have negated the particular applicant's well-founded fear of persecution." *Fergiste*, 138 F.3d at 19; *see also Osorio v. INS*, 99 F.3d 928, 933 (9th Cir.1996) (presumption of asylum eligibility arising from showing of past persecution can be overcome "only by an individualized analysis of [the alien's] situation that demonstrates that changed conditions [in the alien's

country of origin] have eliminated the basis for [his] individual fear of persecution"). The failure to consider an applicant's individual situation in the context of any changed circumstance is a "legal error which undermines the Board's decision." *Fergiste*, 138 F.3d at 18–19.

In this case, the INS presented a 1997 State Department Profile of Asylum Claims and Country Conditions for El Salvador that states that "[n]either the Salvadorian government, including the military, nor the FMLN, which is now a legitimate political party, is targeting for punitive action those who fought or sympathized with the opposing side during the civil war." Hernandez–Barrera presented documentary evidence contrary to the State Department profile, indicating that there are high levels of violence in El Salvador, much of which is committed by former combatants and motivated by political differences tied to the war. Yet neither the BIA nor the IJ considered any of this evidence or explained whether or how the end of the war affected Hernandez–Barrera's particular fear of persecution based on the past harms that he suffered on account of his opposition to the war and the practices of the military.

Relatedly, the BIA never considered whether changed circumstances eliminated the objective basis for Hernandez–Barrera's fear that he would be persecuted for his desertion from the army. Hernandez–Barrera's flight from the army was arguably both a consequence of the persecution he had experienced while in the army and an expression of continuing opposition to the military practices that had led to his persecution. Thus viewed, his fear of persecution for desertion from the army is a fear that is related to his past persecution. Therefore, if we accept that the BIA impliedly accepted Hernandez–Barrera's claims of past persecution, then it becomes necessary to consider whether the Attorney

General met its burden of proving that changed circumstances refuted Hernandez–Barrera's related fear that he would be persecuted as a deserter. *Cf.* 8 C.F.R. 208.13(b)(A)("If the applicant's fear is *unrelated* to the past persecution, the applicant bears the burden of establishing that the fear is well-founded.") (emphasis added). For example, an effective amnesty for deserting soldiers would support a finding of changed circumstances. On the other hand, if army civil war deserters can expect a court martial or some sort of investigative process, the issue of whether the threat of persecution has been lifted may be complicated.[12] Yet neither the BIA nor the IJ evaluated the conflicting evidence presented by the parties on this issue [13] or made any determination as to El Salvador's current policy with respect to the treatment of soldiers who deserted during the civil war or the relationship of that policy to Hernandez–Barrera's individual fear. Thus, even if the BIA addressed the issue of past persecution and applied the correct allocation of evidentiary burdens, we would be unable to sustain the Board's decision because it is not supported by any explanation of how changed circumstances, such as the end of the civil war or new policies relating to the treatment of conscientious objectors and military deserters, eliminated the basis for Hernandez–Barrera's particularized fear. *See Gailius*, 147 F.3d at 44 (holding that a

reviewing court " 'must judge the propriety of administrative action solely by the grounds invoked by the agency,' and 'that basis must be set forth with such clarity as to be understandable.' ") (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).

In sum, the BIA's failure to address the question of past persecution precludes us from meaningful review of its determination that Hernandez–Barrera was ineligible for asylum and withholding of removal. This is so because, in the absence of a determination that Hernandez–Barrera did not suffer past persecution, we do not know whether he was entitled to a regulatory presumption of future persecution. Moreover, it does not appear that the BIA's finding of no-future-persecution reflected a determination that changed circumstances refuted a regulatory presumption based on past persecution. On its face, the BIA's decision considers only the future persecution element of Hernandez–Barrera's asylum claim.

In any event, even if we were to assume that the BIA applied a regulatory presumption of past persecution and concluded that this presumption was overcome by changed circumstances, that conclusion would rest on at least two legal errors. First, the BIA incorrectly imposed on Hernandez–Barrera the burden of showing that his fear of persecution was not negated by changed circumstances, rather than

---

**12.** When and under what circumstances deserters from a particular country's army may or should be viewed as being subject to persecution is obviously a complex issue. *See, e.g., Mekhoukh v. Ashcroft*, 358 F.3d 118 (1st Cir. 2004) (discussing circumstances under which punishment for desertion or draft evasion may be regarded as persecution).

**13.** The Attorney General's evidence consists of the 1997 State Department Profile of Asylum Claims and Country Conditions, which states that the government of El Salvador was not at that time prosecuting individuals who

deserted from military service during the civil war. On the other hand, Hernandez–Barrera presented documents indicating that El Salvador's laws require military service, do not recognize a right to conscientious objection, and impose a two to five year prison sentence upon individuals who desert the army during conflicts with rebels. The record also includes a number of affidavits and articles submitted in connection with Hernandez–Barrera's original hearing which report that the Salvadorian government tortured and killed deserters.

requiring the INS to prove that changed circumstances negated Hernandez–Barrera's well-founded fear. Second, the BIA failed to undertake the individualized analysis of Hernandez–Barrera's particular situation that is required to establish that changed circumstances have overcome the regulatory presumption of a well-founded fear of persecution.

In light of these legal errors, and in the absence of a reasoned finding that Hernandez–Barrera did not suffer past persecution or that the INS met its burden of overcoming a regulatory presumption of future persecution based on past persecution, we remand. *See El Moraghy*, 331 F.3d at 204 (remanding to the BIA where neither the BIA nor the IJ determined whether the asylum applicant had suffered past persecution); *Manzoor*, 254 F.3d at 349 (remanding to the BIA where the Board erred in allocating part of the INS's evidentiary burden to the asylum applicant); *Gailius*, 147 F.3d at 47 (noting that remand is the appropriate remedy "when a reviewing court cannot sustain the agency's decision because it has failed to offer legally sufficient reasons for its decision").[14]

## IV.

For the reasons stated above, the order of the BIA is **vacated,** and the case is **remanded** to the BIA for further proceedings consistent with this opinion.

**So ordered.**

---

14. Because of our disposition of Hernandez–Barrera's asylum claim, we do not address his appeal from the BIA's decision denying withholding of deportation or his CAT claim, both of which require a higher burden of proof. *See Aguilar–Solis v. INS*, 168 F.3d 565, 569 n. 3 (1st Cir.1999) (withholding of deportation requires a clear probability of persecution); 8 C.F.R. § 208.16(c)(2) (applicant for relief under the CAT must demonstrate that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal").