**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-2692

SERGE NGITABAH NYAMBI,

Petitioner,

v.

ALBERTO R. GONZÁLES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Torruella and Lipez, Circuit Judges.

Theodore Nkwenti, on brief for petitioner.
Gina Walcott-Torres, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief for
respondent.

September 1, 2006

**TORRUELLA**, **Circuit Judge**.  Petitioner Serge Ngitabah Nyambi ("Nyambi") asks us to review the Board of Immigration Appeals' ("BIA") denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  After careful review, we deny the petition for review.

## I.  Background

Nyambi is a native and citizen of Cameroon who entered the United States at New York City on October 6, 1999.  He was admitted to the United States on the basis of a fraudulent passport and tourist visa.  On June 6, 2000, Nyambi filed an application for asylum and withholding of removal.[1]

On February 13, 2001, the Immigration and Naturalization Service ("INS")[2] served Nyambi with a Notice to Appear ("NTA"), charging him with removability for failure to possess a valid entry document pursuant to section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A).  Nyambi conceded

---

[1]  The Asylum Officer in his Assessment to Refer mentions an earlier application for asylum, filed on March 17, 2000.  For the purposes of this appeal, we will analyze the most recent application.  The March 17 application does not appear to be on record.

[2]  In March 2003, all of the relevant functions of the INS were transferred to the new Department of Homeland Security, where they were reorganized as the Bureau of Immigration and Customs Enforcement ("BICE").  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)).

removability, renewed his application for asylum and withholding of removal, and sought CAT relief.

On the same date, Nyambi appeared before an Asylum Officer ("AO") for an interview. Nyambi testified that he was raped during the 1992 and 1998 detentions. The AO concluded that Nyambi was not credible and referred the matter to an Immigration Judge ("IJ").

On September 27, 2002, Nyambi appeared at the removal hearing before the IJ. The relevant details of his testimony are set out below.

Nyambi testified that he was a Cameroonian citizen, and that he fled Cameroon because of political oppression. He further testified that he was a member of two Cameroonian opposition groups, the Social Democratic Front ("SDF") and the Southern Cameroon National Council ("SCNC").

According to Nyambi, the SDF, formed on May 26, 1990, is a political group fighting against the "ones [sic] party system in Cameroon." Nyambi alleged that he joined the SDF at its inception and participated in meetings, symposiums, and rallies. He testified that he became a member of the SCNC in 1997 during his last year in high school. The SCNC was a political group that aimed at securing the independence for the Anglophone part of Cameroon. Nyambi also stated that he was a prominent member of the group and that he tried to "sensitize the people to make them

-3-

understand how important it was to be a part of that group." Nyambi also distributed flyers and took part in "a lot of rallies."

Nyambi alleged that he was detained, beaten, and maltreated by the police on three occasions. The first detention, lasting nearly two months, occurred in 1990 at the Brigade Mobile Mixte headquarters in the city of Bamenda. There, Nyambi was beaten and tortured. Nyambi's father negotiated his son's release for a sum of 50,000 francs. The second detention allegedly occurred in October 1992, after the Cameroonian presidential election. Nyambi declared that he was arrested by the government's security forces and detained in a prison in Yaounde. Nyambi testified that he was forced to crawl together with the other inmates on a wet floor, while the guards beat them with clubs. One month after the 1992 arrest, Nyambi allegedly escaped from the correctional facility when the detainees were taken to town to perform some work. The third detention occurred between November 24, 1998 and October 4, 1999. Nyambi testified that he was arrested at a peaceful SCNC demonstration and detained in the Kondengui prison in Yaounde. Nyambi's father negotiated his release and provided him with a passport and visa to the United States.

After further questioning by the IJ, Nyambi first testified that he was raped during the 1990 and 1992 detentions, then he testified that he was raped during the 1992 and 1998

detentions. Finally, Nyambi declared that he knew he was raped twice but that he was "kind of mixed up" about the dates.

Nyambi also introduced his father's affidavit into evidence. This affidavit generally corroborated Nyambi's allegations, averring that Nyambi was "gruesomely sodomized" during the 1990 detention. The affidavit also stated that Nyambi was released from the 1992 detention due to his critical health. Nyambi stated that his father's affidavit is incorrect because it contradicted Nyambi's own previous testimony that he escaped from the 1992 detention. Nyambi also introduced into evidence his SDF membership card and driver's license. Nyambi alleged that his father paid the SDF renewal dues on his behalf and thus obtained the SDF card. Nyambi presented an undated medical legal certificate to document his 1990 rape.

The IJ denied Nyambi's application for asylum, withholding of removal, and CAT relief, but granted him voluntary departure. In her oral decision, the IJ made an adverse credibility finding based on Nyambi's inconsistent testimony regarding the dates of the sexual abuses. Before the AO, Nyambi declared that he was raped in 1992 and 1998. Before the IJ, Nyambi testified initially that he was raped in 1990 and 1992 but then testified that he was "mixed up" about the dates.

The IJ also concluded that Nyambi's submitted documentary evidence did not "rehabilitate the respondent from his unpersuasive

and not incredible [sic] testimony." The IJ pointed to several pieces of evidence to support its reasoning. First, Nyambi himself attacked the accuracy of his father's affidavit with respect to the second detention. Second, the medical legal certificate was undated. Third, the SDF card was issued on January 15, 1999, while Nyambi was in prison. Fourth, Nyambi's driver's license was dated January 12, 2000, when Nyambi was allegedly in the United States.

Nyambi appealed the IJ's decision to BIA. On September 12, 2005, the BIA affirmed the decision of the IJ noting that "the [IJ's] adverse credibility finding was based upon conspicuous, inadequately-explained discrepancies in the respondent's testimony and between his testimony and the affidavits he submitted in support of his claim." Nyambi now petitions for review of this decision.[3]

## II. Analysis

### A. Standard of Review

Ordinarily, we are limited to reviewing the decision of the BIA without more. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003). However, where the BIA defers to the IJ's reasons for denying a petitioner's claims, we view those portions of the IJ's

---

[3] Nyambi does not make any argument about the CAT relief in his appellate brief. Therefore, we deem that issue waived. Nikijuluw v. Gonzáles, 427 F.3d 115, 120 n.3 (1st Cir. 2005) ("[I]ssues adverted to in a perfunctory manner unaccompanied by some effort at developed argumentation, are deemed waived.") (citation and internal quotation marks omitted).

decision as incorporated into the final agency determination. <u>See</u> <u>Hernández-Barrera</u> v. <u>Ashcroft</u>, 373 F.3d 9, 20 (1st Cir. 2004). We review the BIA's decisions under the deferential "substantial evidence standard." <u>Mihaylov</u> v. <u>Ashcroft</u>, 379 F.3d 15, 17 (1st Cir. 2004). <u>See also</u> 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). We must accept the agency's findings of fact so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>INS</u> v. <u>Elías-Zacarías</u>, 502 U.S. 478, 481 (1992).

### B. Asylum

An alien has the burden of establishing that he is eligible for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). To establish eligibility for asylum, an alien must show either past persecution or a well-founded fear of persecution motivated by "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); <u>see also</u> <u>Albathani</u>, 318 F.3d at 373. Any asylum seeker who has established past persecution is entitled to a rebuttable presumption of a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1).

The applicant's testimony, if uncorroborated by convincing evidence, must be credible, persuasive, and refer to specific facts. 8 U.S.C. § 1158(b)(1)(B)(ii). The credibility

-7-

determination may be based on the internal consistency of each of the applicant's statements and "the consistency of such statements with other evidence of record." Id. § 1158(b)(1)(B)(iii). "[I]n the case of an adverse credibility determination, the IJ must offer a specific, cogent reason for [her] disbelief." Mihaylov, 379 F.3d at 21. "[The] adverse credibility determination cannot rest on trivia but must be based on discrepancies that 'involved the heart of the asylum claim.'" Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999) (citation omitted).

In the instant case, the IJ supported her adverse credibility determination by pointing out several inconsistencies in Nyambi's statements relating to the rape incidents, which are central to his asylum claim. As the IJ correctly noted, Nyambi stated in his asylum application that the first detention in 1990 "will remain the most traumatic." Nyambi also stated that he was sexually abused during the first detention. However, Nyambi failed to mention this before the AO, despite the fact that the 1990 detention was allegedly the "most traumatic" incident. Before the IJ, Nyambi first testified that he was raped during the 1990 and 1992 detentions, then testified that he was raped during the 1992 and 1998 detentions. Eventually he testified that he could not remember during which of the detentions he was raped. The medical legal certificate introduced by Nyambi to corroborate his testimony regarding the 1990 rape does not resolve the discrepancy because it

-8-

is undated. These inconsistencies reach to the heart of Nyambi's claims. Compare Ye v. Gonzáles, 446 F.3d 289, 295 (2d Cir. 2006) (finding that the omission from the asylum application of a three day detention accompanied by beatings is a material inconsistency) with Hoxha v. Gonzáles, 446 F.3d 210, 217 (1st Cir. 2006) (noting that "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.") (citation and internal quotations marks omitted). Because the rape incidents were central to Nyambi's claim, we find that the BIA's affirmance of the IJ's adverse credibility determination was supported by specific, cogent reasons.

The IJ gave additional reasons for her adverse credibility finding. First, the IJ did not assign any weight to Nyambi's father's affidavit, basing her ruling on Nyambi's own testimony that the affidavit was incorrect with respect to the 1992 escape. Second, the IJ noted that Nyambi could not explain the issuance date of his SDF card.[4] Third, Nyambi's driving license raised concerns about its accuracy, since it was dated January 12, 2000, when Nyambi was allegedly in the United States. We do not find anything on the record that would compel a reasonable trier of

---

[4] The SDF card was issued on January 15, 1999 when Nyambi was allegedly in prison. Nyambi declared that his father paid the renewal dues and obtained the card. Nonetheless, Nyambi did not show any previous SDF membership cards, although he claimed that he had joined the SDF in 1990.

fact to reverse the BIA's finding of adverse credibility. Therefore, we affirm the BIA's determination. Because "a fully supported adverse credibility determination, without more, can sustain a denial of asylum," Olujoke v. Gonzáles, 411 F.3d 16, 22 (1st Cir. 2005), we find Nyambi not eligible for asylum.

### C.  Withholding of Removal

Having failed to establish eligibility for asylum, Nyambi cannot meet the more stringent standard for withholding of removal. See Albathani, 318 F.3d at 372.  Therefore, we find that Nyambi failed to establish eligibility for withholding of removal.

### III.  Conclusion

For the reasons stated above, the petition for review is denied.

**Denied**.