Bayardo Rafael VALLECILLO–
CASTILLO, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 95–70020.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1996.

Decided Aug. 5, 1996.

As Amended on Denial of Rehearing
July 30, 1997.

Charles E. Nichol, San Francisco, California, for petitioner.

Marion E. Guyton, David M. McConnell, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for respondent.

Before: PREGERSON, TROTT, Circuit Judges, and WINMILL, District Judge.*

Opinion by Judge PREGERSON; Dissent by Judge TROTT.

* The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

PREGERSON, Circuit Judge:

Bayardo Rafael Vallecillo–Castillo petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's denial of his request for asylum and withholding of deportation. This court has jurisdiction under § 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). We grant the petition for review.

## BACKGROUND

Petitioner is a native and citizen of Nicaragua. He entered the United States without inspection on January 12, 1989, at Brownsville, Texas. Petitioner applied for political asylum administratively in San Francisco, California, on March 7, 1989. On March 13, 1990, an order to show cause was issued placing petitioner in deportation proceedings.

On February 19, 1991, an immigration judge ("IJ") held a hearing on the merits of petitioner's claim. The IJ treated petitioner's application as a request for both political asylum and withholding of deportation. *See* 8 C.F.R. § 208.3(b). Petitioner testified to the following facts, which the IJ did not challenge, and which we accept as true. *Singh v. Ilchert,* 69 F.3d 375, 378 (9th Cir. 1995).

After obtaining a university degree from a state-run school in Nicaragua, petitioner taught science at a public school. As a condition of his employment, he was required to teach Sandinista doctrine. He refused to do so because he felt that he had to only teach Biology and Chemistry. The Juventud Sandinista, a Sandinista student group, monitored and disrupted his classes because of his refusal to teach the Sandinista doctrine. Teachers at the school also accused him of being a counter-revolutionary. He left his job because it caused him too many problems.

In addition, after the Nicaraguan Revolution, petitioner's family was persecuted by the Sandinista government on account of their political beliefs. The government imprisoned petitioner's uncle, a member of the former Somoza government, from 1980 to 1983. His brother, who had fought against the Sandinistas, was imprisoned for a year and a half beginning in 1981.

Petitioner and his family were also harassed by the Sandinista Neighborhood Organization ("CDS") for being Somoza supporters. The CDS president harassed petitioner because he did not attend CDS meetings, was teaching at a Catholic school, and was learning English. On one occasion, the CDS president told petitioner he was going to have "more problems" unless he supported the Sandinista government. Thereafter, petitioner's house was set on fire, stoned, and vandalized by the CDS. The government also punished petitioner's family for their failure to attend CDS meetings by temporarily taking away their food rations card.

Petitioner fled because he feared imprisonment by the government. Before leaving the country, he obtained through normal channels an extension on his Nicaraguan passport and an exit visa. After his departure from Nicaragua, government officials continued to harass petitioner's family. In 1989, Petitioner's mother told him that members of the Security Service and the CDS had visited his home and questioned his family about his whereabouts. In a 1991 telephone conversation with his mother, petitioner learned that the local CDS president had come to his house and told his mother that everyone who fled to the United States would be imprisoned upon their return.

At the hearing, the IJ issued an oral ruling. She denied petitioner's request for political asylum and withholding of deportation, but granted petitioner's request for voluntary departure. The BIA affirmed the IJ's ruling. This appeal followed.

## STANDARD OF REVIEW

Where, as here, the BIA incorporates the decision of the immigration judge ("IJ") without conducting an independent review of the record, the court reviews the IJ's decision. *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996) (citing *Alaelua v. INS,* 45

F.3d 1379, 1381–1382 (9th Cir.1995)).[1] In so doing, the court reviews the IJ's determination that petitioner has failed to demonstrate past persecution or a "well-founded" fear of future persecution under the substantial evidence standard. *Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc) (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992)). To obtain reversal, petitioner " 'must demonstrate that any reasonable factfinder would have to conclude that [petitioner] has a well-founded fear of persecution.' " *Id.* (quoting *Ghaly v. INS,* 58 F.3d 1425, 1428 (9th Cir.1995)).

## ANALYSIS

### A. Political Asylum

■ The IJ concluded that petitioner had not suffered past persecution nor established a well-founded fear of persecution. In arriving at this conclusion, the IJ stated:

> Upon consideration of all of the evidence of record I find that the respondent has failed to present specific facts establishing that he has a well-founded fear, that he has actually been the victim of persecution or that he has a well-founded fear that he will be singled out for persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

The IJ further noted that there was no evidence that petitioner had been arrested or interrogated by the government. The IJ also dismissed the documentary evidence presented by petitioner because the articles were general in nature and did not mention Petitioner.

The IJ's findings, however, are not supported by the record. Because the IJ did not challenge the credibility of petitioner, we accept as true the facts as testified by petitioner. *Singh,* 69 F.3d at 378. Further, we note that the IJ found petitioner "credible and consistent." Based on the evidence in the record, we find that petitioner established past persecution.

Petitioner testified to many specific incidents of harassment and persecution which he and his family suffered at the hands of the Sandinistas. The government imprisoned his uncle and brother for their participation in and support of the Somoza government. Petitioner was branded a traitor in the school he worked at for his refusal to teach Sandinista doctrine and was harassed by the CDS for his refusal to attend CDS meetings. Petitioner was threatened by the CDS president that he would have "more problems" unless he supported the Sandinista government. Thereafter, petitioner's home was set on fire, pelted with rocks, and vandalized. Slogans saying that his family betrayed the Sandinistas and supported Somoza and the United States were painted on petitioner's house.

■ Because we find that petitioner has established past persecution, petitioner is entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i). This presumption, however, is rebuttable. To rebut it, the INS must show, by a preponderance of the evidence, that "since the time the persecution occurred conditions in the applicant's country . . . have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if . . . [the applicant] were to return." *Id.*

Here, the Service did not introduce any evidence of changed country conditions into the record and instead relied on the IJ and the BIA to take administrative notice that a democratically elected government took power in Nicaragua in 1990. Both the IJ and the BIA did so. However, petitioner presented evidence that after the new government came to power, the president of the local CDC went to his family's home and threatened that if petitioner returned to Nicaragua he would be put in prison. Petitioner also submitted numerous articles that document politically-motivated killings by the Sandinis-

---

1. The BIA in this case did not conduct an independent review of the record. Rather, the BIA relied on the facts as set out in the immigration judge's decision to affirm the IJ. As the BIA stated: "We agree with the immigration judge's decision for the reasons she gave that the respondent has failed to establish past persecution or a well-founded fear of persecution if he returns to Nicaragua."

tas even after the 1990 change in government.

Essentially, the Service argues that administrative notice of changed country conditions alone overcomes not only the presumption that the petitioner has a reasonable fear of future persecution, but the specific evidence presented by the petitioner as well. We disagree. It is the Service's burden to show by a preponderance of the evidence that petitioner's reasonable fear of future persecution was dissipated by the changed country conditions. It cannot meet this burden by relying solely upon administrative notice in light of petitioner's specific evidence. [5] *See Osorio v. INS,* 99 F.3d 928, 932–33 (9th Cir.1996) ("[A]lthough changed country conditions can under certain circumstances be used to rebut the presumption, the IJ took only cursory notice of the changes in Nicaragua and did not undertake the type of individualized analysis of [petitioner's] situation that we have found necessary to refute the presumption."); *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1257 (9th Cir.1992) ("[A]dministrative notice [of changed conditions] should not be used as a substitute for an analysis of the facts of each applicant's individual circumstances.").

A reasonable factfinder would be compelled to find petitioner suffered past persecution. Because petitioner established past persecution, a rebuttable presumption arose that petitioner had reason to fear similar persecution in the future. Because the INS has failed to rebut this presumption, petitioner is statutorily *eligible* for asylum. *See Prasad v. INS,* 101 F.3d 614, 617 (9th Cir. 1996) (concluding that INS failed to rebut the presumption of a well-founded fear of future persecution even though the BIA did not reach that issue).

The next inquiry, however, "is whether the applicant is *entitled* to asylum as a matter of discretion." *Kazlauskas v. INS,* 46 F.3d 902, 905 (9th Cir.1995). Under 8 U.S.C. § 1158(a), the Attorney General has the authority to grant asylum as a matter of discretion.[2] *Prasad,* 101 F.3d at 617. Thus, we remand to the BIA to allow the Attorney General to exercise her discretion and deter-

mine whether to grant asylum to Vallecillo–Castillo.

**B. Withholding of Deportation**

■ Under 8 U.S.C. § 1253(h)(1), petitioner's deportation *must* be withheld if petitioner has shown a "clear probability of persecution" if he is deported to Nicaragua. *Singh,* 69 F.3d at 380 (quotations and citations omitted). The IJ determined that petitioner was not entitled to withholding of deportation because petitioner had not established a well-founded fear of persecution.

Because we find that petitioner has suffered past persecution, we also find that petitioner is entitled to a presumption "that his life or freedom would be threatened" if deported to Nicaragua. 8 C.F.R. § 208.16(b)(2). To rebut this presumption, the INS must show, by a preponderance of the evidence, that persecution is no longer "more likely than not." *Singh,* 69 F.3d at 381 (citations and quotations omitted). As discussed above, the INS has presented no evidence that rebuts the presumption. Thus, petitioner's deportation must be withheld. *See* 8 U.S.C. § 1253(h)(1) (noting that the "Attorney General *shall not deport*" any alien if that alien's life or freedom would be threatened) (emphasis added).

*CONCLUSION*

We grant the petition for review and reverse the BIA's denial of Vallecillo–Castillo's request for asylum and withholding of deportation. Because asylum is at the Attorney General's request, we remand that portion of the case for the Attorney General to exercise that discretion.

PETITION GRANTED, REVERSED and REMANDED IN PART.

TROTT, Circuit Judge, Dissenting.

I respectfully dissent. In my view, the majority's analysis misapplies the substantial evidence test of *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) ("BIA's determination that [a petitioner] was not eligible for asylum must be upheld if 'supported by reasonable, substantial,

---

2. The INS has delegated this discretionary authority to IJs. The IJ's decision is then reviewable

by the BIA. *Kazlauskas,* 46 F.3d at 905 n. 2.

and probative evidence on the record as a whole.' "). In so doing, this court invades the prerogative of the Board of Immigration Appeals and operates beyond the reach of our power of review.

Moreover, the majority errs in refusing to remand the matter to the Board to determine whether the evidence of record rebuts the presumption of a well-founded fear. Once again, we arrogate power that belongs to others, and in so doing, we are not faithful to our own precedent. *See Surita v. INS,* 95 F.3d 814 (9th Cir.1996) and *Singh v. INS,* 94 F.3d 1353 (9th Cir.1996). The irony is that *Surita* and *Singh* were decided by this very panel, and in both we remanded to the BIA to consider the rebuttable presumption. To me, there is no principled distinction between these cases. In fact, given the political sea-change in Nicaragua in 1990, this is a better case for remand than the other two.

Accordingly, I would deny the petition for review, or in the alternative, I would remand to the BIA for further proceedings.