**Nicken FERGISTE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 97–1851.

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1997.

Decided March 12, 1998.

---

**16**

David S. Clancy, Boston, MA, with whom Deborah E. Anker, Cambridge, MA, was on brief, for petitioner.

Karen Ann Hunold, Attorney, with whom Frank W. Hunger, Assistant Attorney General, and Linda S. Wendtland, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC, were on brief, for respondent.

Before SELYA, STAHL and LYNCH, Circuit Judges.

STAHL, Circuit Judge.

Petitioner Nicken Fergiste appeals a Board of Immigration Appeals ("Board" or "BIA") decision affirming a final order of exclusion, denying him political asylum and withholding of deportation. The Board found that changed country conditions in Haiti had obviated any need for political asylum. Because the Board failed to apply, and the Immigration and Naturalization Service ("INS") failed to rebut, a presumption that petitioner had a reasonable fear of persecution in the future if he were to return to Haiti, we reverse and remand the case to the Board.

### I.

### FACTS AND PRIOR PROCEEDINGS

Fergiste seeks political asylum under section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h) of the INA, 8 U.S.C. § 1253(h), on the basis that he has suffered political persecution in his home country of Haiti and that such persecution will resume if he returns to Haiti.

Fergiste's testimony, affidavit, and asylum application showed the following facts. Fergiste was born in Port–au–Prince, Haiti, on April 17, 1966. He worked as a fork lift driver for the port authority, a supervisor on a merchant ship managed by his cousin, and an accountant. From 1979 until the early 1980s, Fergiste attended and participated in activities at the St. Jean Bosco Church, where Jean–Bertrand Aristide preached reform. He also attended meetings of the National Front for Change and Democracy ("FNCD"), Aristide's political party, and helped to campaign and raise money for Aristide's bid to be president of Haiti. In addition, Fergiste worked with a "neighborhood committee" that, apparently, was both devoted to community improvement and involved with politics, and "Family is Your

Life," an organization dedicated to helping orphans. In 1990, on the day Aristide was elected president, the FNCD assigned Fergiste to monitor for fairness a Port-au-Prince polling booth.

Fergiste believes that, as a result of his open support of Aristide and his friendship with another Aristide supporter, Pierre Charles, he became a target of political persecution by the Ton–Ton Macoutes, a paramilitary group that protected the Duvalier dictatorship until 1986 when the Duvaliers were deposed. He also believes that he was targeted by military "attachés" that protected a series of military dictators from 1986 until Aristide's election in 1990. Fergiste recounts several incidents to support his claim of political persecution. On July 29, 1985, he was shot in the shoulder by a member of the Ton–Ton Macoutes, allegedly because of his association with Pierre Charles. In May 1989, government attachés raided Fergiste's home and, when unable to find Fergiste, murdered his aunt. Following a 1991 coup d'etat during which the military regained power, a political associate of Fergiste was repeatedly threatened and detained and eventually went into hiding, and Pierre Charles was shot and killed. In September 1993, three government attachés approached Fergiste and told him to cease associating with a fellow Aristide supporter and to become an attaché. One of them hit him on the back of his shoulder with either his fist or the butt of a rifle. And in December 1993, three attachés went to Fergiste's mother's house, threatened her by putting a gun to her head, and eventually fired several times, hitting her in the shoulder.

In early 1994, fearing for his safety, Fergiste fled his homeland and came to the United States unlawfully. Although democratic government was restored to Haiti in September 1994,[1] Fergiste remains afraid to return on the grounds that Haiti is still unstable, and that anti-Aristide factions continue to persecute Aristide supporters.

After arriving in the United States and being placed in exclusion proceedings, Fergiste requested political asylum under section 208(a) of the INA, 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h) of the INA, 8 U.S.C. § 1253(h). On August 23, 1995, an Immigration Judge ("IJ") rejected both of these requests. On June 30, 1997, a three-member panel of the BIA rejected Fergiste's appeal in a highly-fractured decision.[2] It issued a final order of exclusion against him. This appeal followed.

## II.

## DISCUSSION

### A. Standard of Review

"The Board's determination of statutory eligibility for relief from deportation is conclusive if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Gebremichael v. INS*, 10 F.3d 28, 34 (1st Cir.1993) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 482, 112 S.Ct. 812, 815–16, 117 L.Ed.2d 38 (1992)); 8 U.S.C. § 1105a(a)(4). Reversal of the Board's determination thus depends on whether the petitioner has shown "that the evidence he presented was so compelling that no reasonable factfinder could fail to find [that he was eligible]." *Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. at 817. As always, we review questions of law *de novo*.

### B. Analysis

Petitioner makes five arguments that the Board's decision should be remanded or reversed; all but the fourth argument are based on his right to procedural due process. First, Fergiste argues that the Board impermissibly applied the doctrine of "changed country conditions" by rote, without adequately considering the effect of changed conditions on his particular case. Second, he contends that the Board failed to consider evidence that anti-Aristide factions continued to persecute Aristide supporters after his

---

1. On September 19, 1994, a multi-national military force led by the United States invaded Haiti and returned Aristide to the presidency. Rene Preval succeeded Aristide to the presidency in 1996.

2. The decision comprised the so-called majority opinion, a concurring opinion, and a dissenting opinion.

1994 return to power and that such persecutions continue to this day. Third, Fergiste argues that, in making its determination, the Board relied on evidence of political changes in Haiti which took place after the parties had submitted briefs to the Board and to which Fergiste was not given an opportunity to respond. Fourth, he asserts that the Board member who authored the concurring opinion in his appeal, and without whom there would have been no majority decision for denial of asylum, failed to apply the presumption of future persecution required by that Board member's finding of past persecution. Finally, Fergiste contends that, although the Board member who authored the controlling opinion found that Fergiste had failed to establish past persecution, he did not provide any explanation for that finding.

We begin with petitioner's fourth argument: that the Board member who authored the concurring opinion committed a legal error which undermines the Board's decision. Our focus on this argument necessarily leads us to address, without deciding, petitioner's first, second, and fifth arguments.

A finding of past persecution triggers a regulatory presumption that the applicant has a well-founded fear of future persecution, provisionally establishing the applicant's refugee status and eligibility for asylum. *See* 8 C.F.R. § 208.13(b)(1)(i)(1997). Where the Board finds that past persecution has been established, the INS has the burden of proving, by a preponderance of the evidence, that "since the time the persecution occurred conditions in the applicant's country of nationality ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if ... he were to return." *Id.*

The INS argues that Fergiste failed to establish past persecution and that, even if he had, the Board implicitly recognized and rebutted the presumption of future persecution by relying on the discussion of changed

country conditions in *In Re E–P–*, No. 3311 (BIA Mar. 14, 1997). In essence, the INS's latter argument is that the official notice of changed country conditions taken by the Board in an earlier case counters the specific evidence of persecution that Fergiste has presented and overcomes the presumption of future persecution. We do not agree with either argument.

■ First, as a legal matter, Fergiste established past persecution. The Board panel that considered Fergiste's appeal consisted of three persons, each of whom wrote a separate opinion, and none of whom joined an opinion by one of the other two members. Although the concurring opinion was so designated because it reached the same outcome—denial of asylum and withholding of deportation—as the so-called majority opinion, it followed the dissenting opinion with regard to its finding of past persecution. Notwithstanding the result of the appeal, the fact remains that two Board members—a majority—found that Fergiste had established past persecution. Thus, as a matter of law, although the author of the "majority" opinion deemed the evidence Fergiste presented to be insufficient to establish past persecution, a presumption of future persecution nonetheless arose from the findings of the remaining Board members.[3]

■ One of the two Board members who found past persecution did not apply a presumption of future persecution, however. Although the dissenting Board member would have applied the presumption, the concurring member did not, stating only that, although he found that Fergiste had established past persecution, he "read[ ] *Matter of E–P* ... to require denial of the respondent's asylum application on the basis of changed country conditions." Because a majority of the Board reasonably found that Fergiste had established past persecution, there arose a rebuttable presumption of future persecu-

---

3. The finding by a majority of the Board that Fergiste had established past persecution is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Gebremichael*, 10 F.3d at 34. We therefore are at a loss to comprehend the INS's argument that

this Court should affirm the Board's decision on the basis that Fergiste had not presented sufficient evidence to establish past persecution. Such an argument urges affirmance based on reasoning that was, in fact, rejected by a majority of the Board itself.

tion, and the Board's failure to apply it constitutes legal error.

■ Second, even if we accept the INS's argument that the Board implicitly applied a presumption of future persecution, the Board's administrative notice of changed country conditions did not suffice to show that *Fergiste himself* no longer had a reasonable fear of future persecution.[4] Abstract "changed country conditions," do not automatically trump the specific evidence presented by the applicant. Rather, changes in country conditions must be shown to have negated the particular applicant's well-founded fear of persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Vallecillo-Castillo v. INS,* 121 F.3d 1237, 1240 (9th Cir.1996); *Osorio v. INS,* 99 F.3d 928, 932–33 (9th Cir.1996).

The only evidence in the record in support of the INS's position were a 1994 advisory opinion letter from the State Department, and a 1994 State Department Profile of Asylum Claims and Country Conditions that discussed Haiti's political and social conditions in generalized terms. For his part, Fergiste presented a great deal of evidence relating to his own specific circumstances. Such evidence included a 1995 letter from the Deputy Representative of the United Nations High Commissioner for Refugees stating that at least seventy Aristide supporters had been murdered in the two months following the United States intervention in Haiti; a 1995 Reuters newswire story stating that a member of the FNCD had been shot to death; and a 1995 report of the New England Observers' Delegation to Haiti stating that political assassinations and intimidation of Aristide supporters persist.

Indeed, Fergiste presented hundreds of pages of documentary evidence that either contradicted the Board's conclusions or placed them into question. Yet the Board

mentioned none of them in its analysis, nor did it discuss how or whether Fergiste's particular situation may be affected by the changed country conditions that it recognized. That the Board ignored Fergiste's individual situation is further supported by the fact that the Board's majority opinion takes the heart of its analysis virtually verbatim from the language of an earlier opinion, *In Re E–P–,* No. 3311 (BIA Mar. 17, 1997), in which the Board denied the petitioner's application for asylum on a finding of *no past persecution* and changed country conditions. Thus, even assuming that the Board implicitly applied a presumption of future persecution, the Board's reliance on general changed country conditions did not support its conclusion that Fergiste's fear of personal persecution is no longer well-founded.

Therefore, without determining whether the Board's rote recitation of the earlier opinion and its failure to consider Fergiste's individual situation in the context of the changed country conditions violated Fergiste's procedural due process rights, we conclude as a matter of law that, because the INS did not rebut the presumption of future persecution once a majority of the Board had found past persecution, Fergiste is statutorily eligible for asylum. *See Vallecillo-Castillo,* 121 F.3d at 1240; *Prasad v. INS,* 101 F.3d 614, 617 (9th Cir.1996) (determining that the INS had not rebutted the presumption of future persecution, even though the Board had not reached that issue). It remains to be determined, however, whether Fergiste is entitled to asylum as a matter of the discretion of the Attorney General. *See Ravindran v. INS,* 976 F.2d 754, 758 (1st Cir.1992); *see also* 8 U.S.C. § 1158(b)(1) (granting discretion to the Attorney General). We thus remand to the IJ to determine, in the exercise of discretion on behalf of the

4. We do not reach Fergiste's argument that the Board disregarded his procedural due process rights by relying on extra-record documentation of changes in country conditions, without notifying him that they were considering those events in deciding his appeal. We note, however, that the INS misinterprets *Gebremichael,* 10 F.3d at 39, when it contends that our conclusion in that case—that a motion to reopen usually will satisfy an asylum applicant's right to notice and an

opportunity to challenge the Board's notice of extra-record facts—constitutes contrary authority that controls Fergiste's argument. Our holding in that case was not, as the INS suggests, that a motion to reopen is always necessary and sufficient to protect a petitioner's rights. Rather, our ultimate determination was that "the demands of due process will, as always, ultimately depend on the circumstances." *Id.*

Attorney General, whether to grant Fergiste's application for asylum.[5]

■ We next address Fergiste's withholding of deportation claim. Section 243(h)(1) of the INA, 8 U.S.C. § 1253(h)(1), provides that "[t]he Attorney General shall not deport or return any alien ... if ... such alien's life or freedom would be threatened." An applicant's deportation must be withheld if he or she establishes that "it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b)(1); *see INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). To be entitled to withholding of deportation, then, an applicant must demonstrate "a clear probability of persecution," *see Stevic*, 467 U.S. at 413, 104 S.Ct. at 2492, a stricter standard than the "well-founded fear of persecution" required to obtain asylum eligibility.

However, some forms of past persecution trigger a regulatory presumption that the applicant is entitled to withholding of deportation. In particular, if the applicant is determined to have "suffered persecution in the past such that his life or freedom was threatened," the INS assumes the burden of proving, by a preponderance of the evidence, that conditions in that country have changed to the extent that "it is no longer more likely than not that the applicant would be so persecuted there." *Id.* § 208.16(b)(2); *Singh v. INS*, 94 F.3d 1353, 1361 (9th Cir.1996). Thus, although a finding of general "past persecution" is sufficient to shift the burden of proof under 8 C.F.R. § 208.13(b)(1)(i) (the regulatory standard for asylum eligibility), the Board must find that the applicant's life or freedom has been threatened to shift the burden of proof under 8 C.F.R. § 208.16(b)(2) (the regulatory standard for withholding of deportation).

■ Here, the Board's finding that Fergiste suffered past persecution indicates that Fergiste is entitled to withholding of deportation. To be sure, the concurring

Board member did not mention specifically anything about the nature of the harm that he found Fergiste to have suffered. Nonetheless, "[a] key factor in finding evidence sufficient for withholding of deportation is whether harm or threats of harm were aimed against petitioner specifically," *Gonzales–Neyra v. INS*, 122 F.3d 1293, 1297 (9th Cir. 1997) (internal citation omitted). We thus determine that the concurring opinion's finding of past persecution, supplemented by the evidence in the record of particularized harm, demonstrate that Fergiste's life or freedom, or both, had been threatened. This conclusion is supported by the fact that the distinction between the asylum eligibility and withholding of deportation standards regarding past harm has played no role in cases that have considered both provisions. *See, e.g., Vallecillo–Castillo*, 121 F.3d at 1240 ("Because we find that petitioner has suffered past persecution, we also find that petitioner is entitled to a presumption 'that his life or freedom would be threatened' if deported...."); *Singh v. Ilchert*, 69 F.3d 375, 381 (9th Cir.1995); *Singh v. Ilchert*, 63 F.3d 1501, 1510 (9th Cir.1995).

The INS thus had the burden of showing that it is no longer more likely than not that the persecution would resume if Fergiste were to return to Haiti. *See* 8 C.F.R. § 208.16(b)(2). As discussed above, the general evidence that the INS presented does not rebut this presumption. We therefore hold that petitioner was entitled to withholding of deportation.

■ Finally, in response to our brother's disagreement with our decision to reverse, rather than to remand, the asylum and withholding of deportation issues, we note that, although courts have seen fit to order a remand for further factfinding in cases in which the Board failed to apply the presumption of future persecution, *see Osorio*, 99 F.3d at 932–33; *Singh*, 94 F.3d at 1361, that course is not necessary in this case. In *Osorio* and *Singh*, the Board had erroneously concluded that the applicants had not suffered past persecution. *See Osorio*, 99 F.3d

---

**5.** By regulation, the INS has delegated the Attorney General's discretionary authority to IJs. *See* 8 C.F.R. §§ 3.10, 208.14(a). An IJ's decision is then reviewable by the BIA. *See* 8 C.F.R. § 3.1(b)(1).

at 931–33; *Singh*, 94 F.3d at 1360–61. In *Singh*, the Board failed to reach the issue of whether the INS had rebutted the presumption because it had incorrectly found that the applicant had not suffered past persecution; the remand allowed the Board to consider this issue for the first time. *See* 94 F.3d at 1360–61. In *Osorio*, a remand was necessary both to address what the court viewed as an insufficiently reasoned credibility determination against the applicant and to reconsider the issue of the presumption if it found the applicant credible. *See* 99 F.3d at 932–33.

In Fergiste's case, by contrast, the Board did find past persecution, but erroneously regarded itself as bound to reject his application for asylum on the basis of changed country conditions. If the Board had instead applied the regulation, the regulation would have required the Board to grant Fergiste's application for withholding of deportation and to find him eligible for asylum because the INS had failed to present individualized evidence rebutting the presumption. This court would have affirmed such a decision, for which there was "substantial evidence." A remand at this stage would permit the INS to argue its case against Fergiste a second time only because the Board failed to comply with its own regulations. Such an opportunity would allow the agency to benefit from its own error at the expense of Fergiste, and we do not feel that the government is entitled to a second bite of the apple in the circumstances of this case.

In light of the foregoing discussion, we *reverse* the Board's denial of asylum and withholding of deportation. Because asylum is granted at the Attorney General's discretion, we *remand* that portion of the case for such a determination.[6]

SELYA, Circuit Judge (concurring in part and dissenting in part).

I concur wholeheartedly in the majority's conclusion that the Board member who authored the pivotal opinion committed a legal error that undermines the Board's decision. If the majority opinion stopped there—vacating the Board's decision and remanding for a further hearing—I would be content. But the majority presses on, deciding for itself that Fergiste has a well-founded fear of future persecution should he return to his homeland. That determination is both fact-sensitive and time-sensitive, and, in my view, ought to be made by the Board on a full record, not gleaned by an appellate court from bits and pieces of an administrative record that has produced an inharmonious cacophony of rulings by three members of the BIA. The case law, while less than crystalline, supports this position. *See, e.g., Osorio v. INS*, 99 F.3d 928, 932–33 (9th Cir.1996) (holding that "[f]ailure to recognize the existence of a presumption in [petitioner's] favor—much less to rebut that presumption in an individualized manner—constitutes an abuse of discretion *requiring remand* ") (emphasis supplied); *Singh v. INS*, 94 F.3d 1353, 1361 (9th Cir.1996) (holding that "because the BIA never applied the regulatory presumptions, we think it appropriate to remand"); *Tarvand v. INS*, 937 F.2d 973, 977 (4th Cir.1991) ("When an alien's request for asylum has been erroneously evaluated by application of the [wrong legal standard], remand is appropriate.").

To be sure, in some cases the record may be so pellucid that remand would be an empty exercise. But, I see no indication that this is such a case. Though *the petitioner* probably could not put forth any additional proof, I have every reason to believe that, in this very fluid situation, the INS might well bring forward material evidence to rebut the presumption that operates in Fergiste's favor. In my judgment, this uncertainty necessitates a more open-ended remand than the majority is willing to grant.

The majority notes that a more open-ended remand would give the INS an opportunity to muster evidence to rebut the presumption in favor of the petitioner. Fair enough—but it will also serve to document

---

6. We note that President Clinton, in an Executive Order on December 23, 1997, directed the Attorney General to defer for one year the deportation of any Haitian national who arrived in the United States prior to December 31, 1995, or who filed for asylum before that date, and who has been continuously present in the United States since that date. It appears that Fergiste falls into this category.

the true state of affairs. In the last analysis, the fact that the parties will have a second bite of the apple is a byproduct of virtually all remand orders that entail further factfinding, and thus, not entitled to much weight. If the BIA believes the record is adequate to permit a principled decision, that is their call to make—not ours.

Because the court takes too much upon itself, and leaves too little to the Board, I respectfully dissent from so much of the opinion as forecloses the INS from attempting to show that Fergiste has no legally sufficient basis for a well-founded fear of future persecution should he be returned to Haiti.