**Bun Chin CHONG, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States.**

No. 04–2017.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 14, 2005.

Decided Feb. 15, 2005.

Elizabeth C. Surin, Morley, Surin & Griffin, Philadelphia, PA, for Petitioner.

Susan K. Houser, Linda S. Wernery, John D. Williams, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before SLOVITER, AMBRO and ALDISERT, Circuit Judges.

OPINION

SLOVITER, Circuit Judge.

Petitioner Bun Chin Chong seeks review of a final order of removal issued by the

Board of Immigration Appeals ("BIA") on March 17, 2004, which ordered Chong's removal and summarily affirmed an immigration judge's ("IJ") decision denying asylum, withholding of removal, and protection from removal under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). This court has jurisdiction to review the final order of removal under 8 U.S.C. § 1252. For the reasons stated below, this court will deny Chong's petition for review.

## I.

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to our disposition. Chong is a forty-five year-old citizen of Indonesia; she was born in Indonesia but is of Chinese ancestry. Although the majority of Indonesia's population is Muslim, Chong is a member of the Buddhist faith. She is a widow and is mother to two adult-aged children, both of whom reside in Indonesia.

Chong was admitted to the United States on or around October 18, 2000 as a nonimmigrant visitor for pleasure with authorization to remain for a temporary period not to exceed six months. Chong, however, exceeded the terms of this visitor's visa. Thus, in September 2001, the Immigration and Naturalization Service ("INS")[1] commenced proceedings against Chong by filing a notice to appear with the United States Immigration Court in Philadelphia, Pennsylvania. In the resultant immigration court proceedings, Chong admitted that she was removable as charged;

however, claiming persecution and threats of torture, she applied for asylum and withholding of removal, as well as for protection under the CAT.

In support of her position, Chong testified before the IJ to several violent incidents that had befallen her and her family in Indonesia. First, Chong testified that in 1984 she was robbed at knife-point by a native Indonesian while she was riding on a motorbike with her then two-year old child. Although Chong acceded to the robber's demands, the assailant nonetheless cut her arm, causing her pain but no long-term injuries. Chong testified that, after the robbery, she asked the driver of the motorbike—who was not of Chinese descent—for help, but "[h]e didn't do anything." App. at 75. She further testified that she did not report this incident to the police because the Indonesian police "do not care for the Chinese people." App. at 76.

Chong further testified that during the well-documented Indonesian riots of May 1998, native Indonesians robbed and ransacked her store. During this event, several rioters smacked her in the face, pulled her hair, and called her a "Chinese pig." App. at 77. Chong conceded that non-Chinese owned stores were attacked and robbed during the riots but she maintained that such establishments "weren't ransacked." App. at 79. In other words, Chong's testimony suggested that the rioters focused their worst violence on Indonesians of Chinese descent. Chong testified that although the physical injuries she suffered during the May 1998 riots were mi-

---

1. Effective March 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions were transferred to the newly formed United States Department of Homeland Security. The BIA, however, remains within the Department of Justice. *Knapik v. Ashcroft*, 384 F.3d 84, 86 (3d Cir.2004) (citing Homeland Security Act of 2002, Pub.L. No. 107–296, §§ 441, 451, 471, 116 Stat. 2135 (2002)).

nor, the event left her feeling frightened and vulnerable.

Finally, Chong testified that in 2000 her then-teenage son was robbed of his bicycle by non-Chinese Indonesians. During this incident, her son's assailants beat him and called him Chinese.

Chong admitted that both of her children were still living in Indonesia and were residing with her sister and mother in Jakarta. Notably, Chong did not testify that her children, sister, or mother had suffered any additional mistreatment. Nonetheless, she testified that she was afraid to return to Indonesia because it is "not safe" there for people of "Chinese descent." App. at 96.[2]

The IJ found that Chong had "provided believable testimony," App. at 120, and credited her version of events respecting the three violent incidents outlined above. The IJ, however, held that this evidence was insufficient to establish past persecution; instead, the IJ found that the events, although unfortunate, merely constituted "discrimination and harassment." App. at 47.

Moreover, the IJ, taking administrative notice of, *inter alia,* the United States Department of State's 2001 Country Report for Indonesia, *see generally Sevoian v. Ashcroft,* 290 F.3d 166, 176 (3d Cir. 2002), noted that although there was evidence that Christian Chinese living in Indonesia have suffered and continue to suffer mistreatment, there was little evidence tending to suggest a pattern of Indonesian persecution against people of Chinese descent generally. Thus, the IJ found that Chong, as a Buddhist, had not established a well-founded fear of future persecution.

Relatedly, the IJ found that Chong had not shown that it was more likely than not that she would be tortured if returned to Indonesia.

For these reasons, the IJ denied Chong's petition for asylum, withholding of removal, and relief under the CAT. Following the BIA's affirmance without opinion, Chong lodged a timely petition for review with this court.

## II.

Whether an applicant qualifies for asylum, withholding of removal, or relief under the CAT is generally a factual determination, which this court will review under the substantial evidence standard.[3] *Shardar v. Ashcroft,* 382 F.3d 318, 323 (3d Cir.2004); *Abdille v. Ashcroft,* 242 F.3d 477, 483 (3d Cir.2001). Under the substantial evidence standard, the IJ's finding must be upheld unless "the evidence not only *supports*" a contrary conclusion, "but *compels* it." *Immigration & Naturalization Serv. v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *see also Chang v. Immigration & Naturalization Serv.,* 119 F.3d 1055, 1060 (3d Cir.1997) ("On questions of fact, we will reverse [an IJ's] determination that [an applicant] is not eligible for asylum ... only if a reasonable fact-finder would have to conclude that the requisite fear of persecution existed."). Stated otherwise, this court's review is extremely narrow; indeed, because of the profound foreign policy implications, "judicial deference to the Executive Branch is especially appropriate in the immigration context." *Im-*

---

**2.** Aside from herself, Chong did not present any witnesses at her IJ hearing.

**3.** When, as in the case at bar, the BIA does not render its own opinion but rather defers

to or adopts the opinion of an IJ, this court must review the decision of the IJ as the final agency decision. *Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004).

migration & Naturalization Serv. v. Aguirre–Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

To qualify as a "refugee" who may receive asylum under 8 U.S.C. § 1158, an alien must establish that she is unable or unwilling to return to her country of nationality because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Elias–Zacarias, 502 U.S. at 481, 112 S.Ct. 812 (internal quotations and citations omitted). The concept of "persecution" involves government involvement or the involvement of individuals the government is either "unable or unwilling" to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002).

To establish "past persecution" and entitlement to asylum, an applicant must show: (1) an incident, or incidents, that constituted persecution; (2) that occurred on account of one of the statutorily-protected grounds; and (3) were committed by the government or forces the government is either unable or unwilling to control. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir.2004). An asylum applicant can demonstrate that she has a well-founded fear of "future persecution" by showing "that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." Gao, 299 F.3d at 272. The threshold for establishing eligibility for withholding of removal is even higher than that for establishing entitlement to asylum, requiring the petitioner to demonstrate a "clear probability" that upon deportation to the country of origin, her life or freedom would be threatened on account of one of the statutorily enumerated factors. Senathirajah v. Immigration &

Naturalization Serv., 157 F.3d 210, 215 (3d Cir.1998). Given this higher standard, an applicant who does not qualify for asylum necessarily does not qualify for withholding of removal. Guo v. Ashcroft, 386 F.3d 556, 561 n. 4 (3d Cir.2004).

The BIA and this court have adopted a narrow definition of persecution, which "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir.1993); see also Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA 1985). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin, 12 F.3d at 1240.

Finally, to qualify for relief under the CAT, an applicant for relief bears the burden of proving through objective evidence that " 'it is more likely than not' " that she would be "tortured" in the country to which the applicant would be removed. Wang v. Ashcroft, 368 F.3d 347, 348 (3d Cir.2004) (quoting 8 C.F.R. § 1208.16(c)(2)).[4]

### III.

■ As recounted above, the IJ found that Chong had not met her burden of proof to show that she had suffered past persecution or that she had a well-founded fear of future persecution in Indonesia. Chong has failed to demonstrate that evidence in the record "compels" a finding different from that reached by the IJ. Shardar, 382 F.3d at 323. Rather, the IJ's finding that the events testified to by Chong did not rise to the level of "past persecution" was supported by substantial evidence in the record, given the judicial and executive constructions of the term

---

4. The definition of "torture" under the CAT is set forth at 8 C.F.R. § 208.18(a)(1) and need not be repeated here. See also Ogbudimkpa v. Ashcroft, 342 F.3d 207, 211–13 (3d Cir.2003); Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir.2003).

"persecution." *See Fatin,* 12 F.3d at 1240; *Matter of Acosta,* 19 I. & N. Dec. at 222; *compare with Fergiste v. Immigration & Naturalization Serv.,* 138 F.3d 14, 16–19 (1st Cir.1998) (finding persecution), *and Desir v. Ilchert,* 840 F.2d 723, 724–26 (9th Cir.1988) (same).

■ We will also defer to the IJ's finding that Chong does not have a well-founded fear of future persecution. Because the IJ reasonably held that the several incidents of mistreatment suffered by Chong were not significant enough to qualify as past persecution, such incidents do little to bolster Chong's fear of persecution if she were to return to Indonesia. Furthermore, it is notable that Chong's children, as well as her sister and mother, have apparently been able to live in Jakarta largely without incident. Finally, the State Department Country Reports and other documents relied upon by the IJ do not compel a finding different than that reached by the IJ. *Shardar,* 382 F.3d at 323. In sum, the IJ's determinations respecting future persecution were supported by substantial evidence in the record.

Substantial evidence also supports the IJ's decision denying relief under the CAT, as the standards controlling relief under that treaty are even more stringent than those controlling the asylum inquiry. Neither the record nor Chong's brief indicate any probability, much less a probability "more likely than not," that Chong would be tortured if she returns to Indonesia. *Wang,* 368 F.3d at 348 (internal citation and quotation omitted).

## IV.

For the above reasons we will deny Chong's petition for review.