# United States Court of Appeals
## For the First Circuit

No. 18-1790

MADHAV PRASAD DAHAL,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Kayatta, <u>Circuit Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Selya, <u>Circuit Judge</u>.

<u>Dilli Raj Bhatta</u> for petitioner.
<u>Victoria M. Braga</u>, Trial Attorney, Office of Immigration
Litigation, U.S. Department of Justice, <u>Joseph H. Hunt</u>, Assistant
Attorney General, Civil Division, and <u>Cindy S. Ferrier</u>, Assistant
Director, for respondent.

July 18, 2019

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

SOUTER, **Associate Justice**.  In the face of threatened deportation to Nepal, his country of citizenship, petitioner Madhav Prasad Dahal applied to the Government for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  See 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 1208.16(c).  He contested deportation owing to his fear of persecution for his political beliefs if he repatriated.  An Immigration Judge denied his application, and the Board of Immigration Appeals (BIA) affirmed.  We respond to Dahal's petition for review of the BIA's decision by granting the petition in part, denying it in part, and remanding.

**I**

In 1992, Dahal officially became a member of the Nepali Congress Party, which was a rival of the Communist Maoists.  In 1996, the Maoists began an armed insurgency to overthrow the government.

According to Dahal, whom the Immigration Judge found to be a credible witness, the Maoists persecuted him both during and after this conflict, based on his affiliation with the Congress Party.  He testified that, beginning in 1997, Maoists sent him threatening letters and made similar phone calls, invaded his home, attacked him at a Congress Party meeting, and held him hostage until he agreed to pay them a portion of the profits from his business.  Dahal claims that the persecution persisted even after

- 2 -

he reported the incidents to the police and changed his residence several times, and failed to cease in the aftermath of the insurgency's formal end with the signing of a peace agreement in 2006.

In July 2010, Dahal traveled to the United States on a business trip. His visa authorized him to remain in the United States until January 2011, but he did not leave when the visa expired. Instead, he says he decided to stay because his relatives in Nepal informed him that an armed group of Maoists had come to his home there and threatened to kill him upon his return. He also testified that at one point during his absence the Maoists managed to cut off the water supply to his family's residence.

In June 2011, Dahal filed an application for asylum with the United States Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security (DHS). USCIS declined to grant Dahal asylum and referred his application to an Immigration Judge. DHS then ordered Dahal to appear before the Immigration Judge to show why he should not be removed from the United States for overstaying his visa.

In 2017, the Immigration Judge ordered Dahal's removal to Nepal. See In re Dahal, No. A200-173-934, at 15 (Exec. Office for Immigration Review July 25, 2017) ("IJ Decision"). In denying his application for asylum, the judge credited Dahal's testimony that he faced political persecution when he was living in Nepal,

and found that as a result Dahal had become entitled to a presumption that he had the "well-founded fear of persecution" that is necessary to obtain asylum. 8 U.S.C. § 1101(a)(42). Nonetheless, the judge concluded that Dahal was not eligible for asylum because the Government had rebutted the presumption by showing that there had been a "fundamental change in circumstances" in Nepal since Dahal last lived there in 2010. 8 C.F.R. § 1208.13(b)(1)(i)(A). The judge relied heavily on "Country Reports" produced by the Department of State, which indicated that Nepal's government had reached a truce with the Maoists in 2006 and had held free and fair elections in 2013.

In the same decision, the Immigration Judge also denied two other variants of requested relief from removal. The judge concluded that Dahal was not entitled to withholding of removal because he could not satisfy the more lenient eligibility requirements for asylum and had failed to show that it was more likely than not that he would face persecution in Nepal. See id. § 1208.16(b). And the judge found that Dahal was not entitled to protection under the United Nations Convention Against Torture because he had not "establish[ed] that it is more likely than not that he . . . would be tortured" if deported to Nepal. Id. § 1208.16(c)(2).

Dahal appealed to the BIA, which adopted and affirmed the Immigration Judge's decision. In rejecting Dahal's asylum

request, along with his claim that the Government had not rebutted the presumption of eligibility, the BIA followed the judge's reliance on the State Department's Country Reports on Nepal as showing a fundamental change in country conditions. And it pointed out that Dahal had not been persecuted during the year before he left Nepal; that Dahal has been absent from Nepal for many years, "diminish[ing] the likelihood that he would be persecuted"; and that Dahal's family has "lived in Nepal apparently without persecution" since 2010. In re Dahal, No. A200-173-934, at 2 (BIA July 26, 2018) ("BIA Decision"). The BIA also agreed with the Immigration Judge that Dahal's failure to establish his eligibility for asylum required the conclusion that he was not entitled to withholding of removal. Finally, it found that Dahal had not shown the likelihood of torture necessary to qualify for protection under the Convention Against Torture.

**II**

"[W]here, as here, the BIA accepts the [Immigration Judge's] findings and reasoning yet adds its own gloss, we review the two decisions as a unit." Xian Tong Dong v. Holder, 696 F.3d 121, 123 (1st Cir. 2012). We assess the factual findings of the BIA and the Immigration Judge, as well as their determinations regarding asylum, withholding of removal, and protection under the Convention Against Torture, under the deferential substantial evidence standard. See Balachandran v. Holder, 566 F.3d 269, 273-

274 (1st Cir. 2009). "This standard requires us to accept all findings of fact so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014) (quoting Gilca v. Holder, 680 F.3d 109, 114 (1st Cir. 2012)). As otherwise formulated, the standard requires that a reviewing court accept the findings if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see 8 U.S.C. § 1252(b)(4)(B) (noting that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

## A

To be eligible for asylum, Dahal must show that he is a "refugee" under the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1)(B)(i). Dahal may qualify as a "refugee" by demonstrating that he is unwilling or unable to return to Nepal "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42).

Because the BIA and the Immigration Judge found that Dahal had faced past persecution based on his political beliefs, they concluded that he had previously become entitled to a

- 6 -

presumption of a "well-founded fear of persecution."  8 C.F.R. § 1208.13(b)(1).  The BIA and the Immigration Judge also found, however, that the Government had satisfied the standard set by regulation for rebutting this presumption in showing by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances" such that Dahal "no longer has a well-founded fear of persecution."  Id. § 1208.13(b)(1)(i)(A).

Before us, neither side disputes that Dahal suffered past persecution on account of political opinion and therefore had become entitled to a presumption of a well-founded fear of persecution going forward.  The key question is whether substantial evidence supports the conclusion of the BIA and the Immigration Judge that the Government rebutted this presumption by showing a fundamental change in circumstances in Nepal such that Dahal no longer has a well-founded fear of persecution.  We conclude that the answer is no.

The BIA and the Immigration Judge relied on evidence from the State Department's Country Reports on Nepal and from Dahal's own testimony.  However, even under the deferential "substantial evidence" standard, the evidence in the record here cannot suffice to meet the Government's burden to show by a preponderance a fundamental change in circumstances eliminating the presumption of well-founded fear.

**1**

Start with the Country Reports on Nepal, which were the principal evidentiary basis for the decisions of the BIA and the Immigration Judge. See IJ Decision 13 ("This is a case where the Government has met its burden through the Country Reports . . . ."). In evaluating the information contained in Country Reports, our cases have made clear that "abstract evidence of generalized changes in country conditions, without more, cannot rebut a presumption of a well-founded fear of future persecution." Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005). Rather, "to be effective, evidence of changed country conditions" derived from a Country Report "must negate a petitioner's particular fear." Id. Thus, it is only when a Country Report "convincingly demonstrates material changes in country conditions that affect the specific circumstances of an asylum seeker's claim" that "the report may be sufficient, in and of itself, to rebut the presumption of future persecution." Id. at 36 (emphasis added).

In Dahal's case, the BIA and the Immigration Judge attempted to show a fundamental change in conditions in Nepal by pointing to several facts as stated in the Country Reports: (i) Nepal's government reached a peace agreement with the Maoists in 2006 that formally ended the Maoist insurgency; (ii) Nepal held free and fair elections in 2013; and (iii) Nepal adopted a new constitution in 2015. IJ Decision 10-12; BIA Decision 1-2. In

context, however, these facts do not "affect the specific circumstances" of Dahal's claim of persecution. Palma-Mazariegos, 428 F.3d at 36.

As to the first, the 2006 peace agreement could not have "negate[d]" Dahal's "particular fear" of persecution because Dahal continued to face persecution even after the agreement was signed. Id. at 35. Dahal testified that the Maoists had sent him a threatening letter in 2008, had physically assaulted him in 2009, and had shown up at his house and threatened to kill him in 2010. IJ Decision 9-10.

As to the second, although the 2016 Country Report did describe the 2013 election as "free" and "fair," id. at 12, the BIA and the Immigration Judge failed to mention the very next sentence in the Report, which indicates that Maoists continued to persecute their political opponents during the election: "In an effort to obstruct the 2013 elections, a breakaway Maoist faction, the Communist Party of Nepal-Maoist, committed acts of political violence and intimidation." U.S. Dep't of State, Country Reports on Human Rights Practices: Nepal 21 (2016) ("2016 Country Report"). Thus, far from undercutting Dahal's fears, the Country Report on the elections recognizes a remaining threat of Maoist persecution.

As to the third, the BIA and the Immigration Judge did not explain why the promulgation of a new constitution in Nepal diminished the risk of political persecution. In fact, other

evidence from the Country Reports suggests that the risk is still present. As the Immigration Judge acknowledged, the Country Reports show that Nepal "continue[s] to suffer from human rights problems"; that "there are reports of the government or its agents committing arbitrary or unlawful killings"; and that the government "has essentially abandoned its attempts to bring to justice those insurgents who committed atrocities . . . up until 2006." IJ Decision 12; see BIA Decision 1 (noting "continued insurgent activity and human rights problems").

The Immigration Judge tried to deflect these findings by noting that this evidence of human rights abuses "has limited significance" with respect to Dahal himself. IJ Decision 12. This assertion, however, ignores the record facts that the Maoists are now active participants in the government and have held key leadership posts, facts that limit the efficacy of the peace agreement, elections, and constitution to mitigate Dahal's specific fears of persecution at the Maoists' hands. The BIA, in the course of the appeal, sought to downplay the evidence favorable to Dahal by noting that the Country Reports do not demonstrate "systematic or pervasive persecution of active members in the Nepali Congress Party." BIA Decision 1-2. But the Country Reports plainly indicate that the Maoists have continued to persecute their political opponents, see 2016 Country Report 21; U.S. Dep't of State, Country Reports on Human Rights Practices: Nepal 2-3 (2013),

and Dahal's own testimony shows that the Congress Party is one such opponent.  See supra, at 2-3.

In short, the information from the Country Reports on which the BIA and the Immigration Judge relied cannot satisfy the Government's burden to demonstrate by a preponderance of the evidence that there has been a fundamental change in conditions in Nepal affecting Dahal's circumstances.  If anything, the evidence from the Country Reports supports the view that Dahal still faces a risk of politically driven persecution in Nepal.

**2**

Aside from the Country Reports, the BIA and the Immigration Judge also pointed to the record facts of Dahal's own case.  Based on the Immigration Judge's findings, the BIA asserted (i) that Dahal lived in Nepal "without physical harm by his alleged persecutors" for "more than one year" prior to his departure from Nepal; (ii) that "since 2010, [Dahal's] parents, wife, son[,] and three siblings have lived in Nepal apparently without persecution"; and (iii) that Dahal's "extended absence from Nepal diminishe[d] the likelihood that he would be persecuted" upon returning to Nepal.  BIA Decision 2.  Given other undisputed facts from the record, however, these assertions do not by themselves or combined with the Country Reports show a fundamental change in country conditions rebutting the presumption of a well-founded fear on Dahal's part.

The BIA's first claim (that Maoists did not persecute Dahal for a one-year period between 2009 and 2010) carries little, if any, weight. That is because Dahal's testimony, which the Immigration Judge credited, indicated that he faced death threats even after leaving Nepal in 2010. According to Dahal, relying on his wife's account, Maoists came to his home later in 2010 and told his family that he would be murdered upon his return from the United States. IJ Decision 10; see Transcript of IJ Hearing at 49:6-18, In re Dahal (Exec. Office for Immigration Review July 25, 2017) (No. A200-173-934). In light of this more recent evidence of persecution, the fact that Dahal was not harmed in the year immediately preceding his departure from Nepal does not support the finding of a relevant fundamental change. Moreover, even when Dahal faced political persecution while living in Nepal between 1997 and 2009, there were often extended periods (sometimes lasting several years at a time) during which Dahal did not confront violence or receive threats. IJ Decision 7-8 (recounting a three-year gap between incidents from April 1999 to September 2002); id. at 9 (recounting a three-year gap from April 2004 to December 2007). Each time, however, the lull ended abruptly, and the threats resumed. Dahal's past experiences therefore tend to show that a one-year period of quiescence is not a reliable signal of changed conditions.

- 12 -

The BIA's second assertion (that Dahal's family has been free from persecution since 2010) mischaracterizes the record. That is because Dahal testified that the Maoists shut off the water at his family's home in 2012 or 2013. Transcript of IJ Hearing at 50:12-14, In re Dahal (No. A200-173-934). The decisions of the BIA and the Immigration Judge never questioned the accuracy or credibility of this testimony. In any event, even if the BIA's description of the record evidence were accurate, it still would be of limited significance. The fact that Dahal's family has not been threatened while Dahal has been out of the country says very little about whether Dahal himself will face persecution upon his return to the country. Even when Dahal was living in Nepal and was subject to political persecution by the Maoists, his family members were targets of persecution to a limited degree at most, suffering at the hands of the Maoists only to the incidental extent that they served as the conduits by which the Maoists sought to reach Dahal himself. See IJ Decision 10 (noting that Maoists came to Dahal's family home in 2010 seeking to kill Dahal). Moreover, the BIA and the Immigration Judge did not point to any record evidence demonstrating that Dahal's family members shared his political opinions or were members of the Congress Party. Thus, there is no basis above the level of speculation for concluding that Dahal's family members were "similarly situated" to him, and the "lack of harm" to them accordingly is not "entitled to weight

- 13 -

in the decisional calculus." Morales-Morales v. Sessions, 857 F.3d 130, 134 n.1 (1st Cir. 2017) (quoting Vasili v. Holder, 732 F.3d 83, 91 (1st Cir. 2013)).

Finally, the BIA's conclusory assertion that Dahal's extended absence from Nepal lowers the likelihood of persecution should not be given much, if any, weight. In light of evidence from the Country Reports suggesting that human rights abuses and Maoist persecution have persisted, Dahal's absence from Nepal does not speak forcefully to the question whether or to what extent underlying conditions in Nepal have changed in relation to him. See, e.g., IJ Decision 12; 2016 Country Report 21. Moreover, as noted, even while Dahal was living in Nepal, there were extended periods during which Dahal received no threats of persecution, but such periods of comparative calm never provided Dahal with security against renewed threats at some point. See supra, at 12. Thus, in light of the pattern of persecution Dahal faced while living in Nepal, Dahal's period of absence from Nepal is of limited probative value in assessing whether there has been a change in conditions that should discount the basis for Dahal's fear of persecution.

3

In sum, the Country Reports on Nepal and the testimony in Dahal's own case do not show that Nepal's conditions have fundamentally changed in a way that affects the specific circumstances of his claim, and the conclusions of the BIA and the

Immigration Judge are not supported by substantial evidence. Under that deferential standard, the decision below may be reversed or vacated only if the "record is such as to compel a reasonable factfinder to arrive at a contrary determination." Palma-Mazariegos, 428 F.3d at 34. We view the record evidence here as compelling a reasonable factfinder to conclude that the Government has not met its burden to rebut the presumption of a well-founded fear of persecution.

Given the Government's failure to rebut this presumption, Dahal is statutorily eligible to seek asylum. Because "[i]t remains to be determined, however, whether [Dahal] is entitled to asylum as a matter of the discretion of the Attorney General," Fergiste v. INS, 138 F.3d 14, 19 (1st Cir. 1998); see 8 U.S.C. § 1158(b)(1), we grant the petition for judicial review in part, vacate the denial of asylum, and remand the case to the agency to determine, "in the exercise of discretion on behalf of the Attorney General," whether Dahal should be granted asylum, Fergiste, 138 F.3d at 19-20; see 8 C.F.R. § 1208.14(a).

**B**

Next, we turn to Dahal's application for withholding of removal. To be entitled to withholding of removal, Dahal must establish that his "life or freedom would be threatened . . . on account of race, religion, nationality, membership in a particular social group, or political opinion" upon his return to Nepal. 8

- 15 -

C.F.R. § 1208.16(b). To meet his burden, Dahal must demonstrate a "clear probability" of persecution, which is a more stringent standard than the "well-founded fear of persecution" that determines an applicant's eligibility for asylum. Fergiste, 138 F.3d at 20 (quoting INS v. Stevic, 467 U.S. 407, 413 (1984)). If he has carried his burden, withholding of removal is mandatory unless a statutory exception barring relief applies. See INS v. Aguirre-Aguirre, 526 U.S. 415, 420 (1999) (noting that "withholding is mandatory unless the Attorney General determines one of the exceptions applies," whereas "the decision whether asylum should be granted to an eligible alien is committed to the Attorney General's discretion").

As is true in the context of asylum claims, "some forms of past persecution trigger a regulatory presumption that the applicant is entitled to withholding of deportation." Fergiste, 138 F.3d at 20. In particular, if Dahal establishes that he has "suffered past persecution," he is entitled to a presumption that his "life or freedom would be threatened in the future" for the purpose of withholding. 8 C.F.R. § 1208.16(b)(1)(i). To rebut that presumption, the Government bears the burden to prove by a preponderance of the evidence that country conditions have changed such that it is no longer more likely than not that Dahal's life or freedom would be threatened if he returned to Nepal. Id. § 1208.16(b)(1)(i)(A).

In this case, the BIA and the Immigration Judge both concluded that Dahal had not shown the "clear probability" of persecution necessary to be entitled to withholding of removal because he had not met the less stringent "well-founded fear of persecution" standard for asylum eligibility. As we have said, however, the evidence shows that a well-founded fear of persecution presumptively remains, making him eligible for asylum. We thus have rejected the principal justification given by the BIA and the Immigration Judge for denying Dahal's application for withholding of removal and so now grant the petition for judicial review in part and vacate the denial of withholding of removal.

We accordingly remand the case to the BIA for further consideration of Dahal's withholding of removal claim. That said, at least at this juncture, it is not apparent to us, based on the record, that Dahal has failed to show his entitlement to the relief of withholding. As noted before, the Immigration Judge and the BIA credited Dahal's testimony that he faced death threats and violence during and after the Maoist insurgency, which tends to show that he has "suffered past persecution," so as to entitle him to a presumption that his "life or freedom would be threatened" upon his return to Nepal. 8 C.F.R. § 1208.16(b)(1)(i); see IJ Decision 8 (noting that Dahal was told "he would be shot"); id. at 9 (noting that Maoists told Dahal that "they would shut down his business and kill him"). And for reasons set out in discussing

- 17 -

the asylum claim, the Government's evidence of changed country conditions has little apparent effect in countering Dahal's evidence of the threats just mentioned. But because the Immigration Judge and the BIA have confronted the withholding application only on an unsupportable assumption of his ineligibility to claim asylum and so have not weighed the total corpus of evidence offered in support of the withholding claim, this evidence should now be assessed in the first instance by the agency on remand (if it is necessary to reach the issue at all).

### C

Finally, Dahal argues that substantial evidence does not support the BIA's denial of his application for protection under the Convention Against Torture. To obtain relief under the Convention, Dahal must prove by objective evidence "'that it is more likely than not that he will be tortured if he is deported.'" Martinez v. Holder, 734 F.3d 105, 110 (1st Cir. 2013) (quoting Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004)). Here, the Immigration Judge and the BIA concluded that Dahal failed to show by a preponderance of the evidence that he would be tortured upon his return to Nepal. IJ Decision 15; BIA Decision 2-3. Dahal now alleges in response that the "government has continually turned a blind eye to the victims of Maoist torture." Brief for Petitioner 26. He does not, however, offer any record evidence to back up this conclusory allegation, or to support the claim that he himself

would be tortured if he were deported to Nepal.  We therefore see no sound reason to disturb the BIA's denial of relief under the Convention.

## III

Because substantial evidence does not support the BIA's decision to deny Dahal's applications for asylum and withholding of removal, we grant the petition for review in part and vacate the denials of his asylum and withholding of deportation claims. We deny the petition for review in part and affirm the denial of relief sought under the Convention Against Torture.  And we remand the case for further proceedings.

So ordered.