[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12325
Non-Argument Calendar
_____

Agency No. A216-277-802


NARENDRA REULE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 28, 2020)

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Narendra Reule petitions for review of the Board of Immigration Appeals's decision dismissing his appeal of the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. We deny Reule's petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Reule, a native and citizen of Nepal, illegally entered the United States on February 24, 2018. On April 19, 2018, the government charged Reule with being removeable for entering without admission at a port of entry. Reule conceded that he was removeable but said he'd file for asylum.

In November 2018, Reule filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, indicating that he feared he would be persecuted and tortured in Nepal based on his political opinion. Specifically, Reule alleged that he was "a member of the Nepali Congress Party," he "opposed the Maoist Party," and "[m]embers of the Maoist Party beat [him] and [his] family." Reule stated that he "fear[ed] further harm by members of the Maoist Party" if he were to return to Nepal. Reule filed several documents in support of his application, including news articles involving the Nepali Congress Party and a Department of State country report about Nepal.

2

On January 11, 2019, an immigration judge held a hearing on Reule's application. Reule testified that he left Nepal because he was "threatened and beaten by the Maoist[s]" for being a member of the Nepali Congress Party. Reule first joined the Nepali Congress Party in April 2017. Reule's father and brother were also involved in the party.

The first time Reule had any problem with Maoists was in June 2017, when they came to his home and threatened his family. Reule was gone at the time, campaigning for the Nepali Congress Party in a local election. The Maoists told Reule's family that Reule needed to leave the Nepali Congress Party and join the Maoist Party. The Maoists also told Reule's father to leave the Nepali Congress Party but did not hurt him.

A few days later, Reule and three others were hanging a banner for the Nepali Congress Party near a village. A bus arrived with eight to ten Maoists who started punching Reule and beating him with a stick. The Maoists told Reule not to support or campaign for the Nepali Congress Party. The attack lasted almost one hour. Reule eventually managed to run away from his attackers and went home.

As a result of the attack, Reule suffered a bump on his head as well as bumps and bruises on other parts of his body. Reule also became forgetful when speaking and had problems with his vision. However, Reule did not seek medical treatment because he feared that Maoists would find him and kill him. Reule also did not

3

report the attack to the police because he believed that the police were part of the Maoist government. Reule spent only thirty minutes at home and then went to the Rukum District headquarters to "save [his] life." Reule stayed there for fifteen days, until his family informed him that Maoists were looking for him and that he would be killed. Reule then went to Kathmandu and stayed there for ten days, but he left after his family told him that Maoists "might" be looking for him there because they continued to ask about him.

At the time of the hearing, Reule said he feared that he would be killed if he were to return to Nepal. Maoists had won the election, and Reule felt there was nowhere in Nepal he could safely live because Maoists were "everywhere." Reule believed he could not get help from the police or the government if he were to go back to Nepal because Maoists would learn of his return and kill him. Reule did not know if anything had happened to his family since he left. When asked if his father and brother ever had problems with Maoists, Reule noted only that his brother had problems.

The immigration judge denied Reule's application. The immigration judge found Reule to be "generally credible" but concluded that Reule was ineligible for asylum because he did not demonstrate that he was "unable or unwilling to avail himself [of] the protection of his home country." The immigration judge noted that, by Reule's own testimony, "his attackers were Maoist supporters," and there was

4

"no evidence that there were any government officials involved in any attack or harm on [Reule] in Nepal." The immigration judge concluded that Reule "ha[d] not shown the government condoned the actions of the[] attackers/Maoist supporters or demonstrated inability to protect him." The immigration judge found that Reule "never sought protection of the police or government officials in Nepal."

The immigration judge also concluded that Reule was ineligible for asylum because he "failed to establish that he suffered past persecution or ha[d] a well-founded fear of future persecution." As for past persecution, the immigration judge noted that Reule "offered no independent reliable evidence of injuries that he sustained from []his attack." The immigration judge acknowledged Reule's testimony about his injuries but stated that "[Reule's] testimony [was] balanced by the fact that he never received any medical treatment in Nepal or subsequent to th[e] attack." The immigration judge found that "[t]here [was] no evidence of any injury whatsoever" and concluded that Reule's "experience neither individually [n]or cumulatively r[o]se to the level of persecution."

As for Reule's fear of future persecution, the immigration judge found that Reule's fear was "not subjectively or objectively reasonable as a general member or supporter of the Nepali Congress Party." The immigration judge noted that "there [was] no objective evidence that [Reule] would be subject to harm" if he were to return to Nepal. The immigration judge found that Reule's family remained in Nepal

5

unharmed and that Reule "was able to live safely in Rukum and Kathmandu," as there was "no evidence of any negative events or interactions in those locations."

The immigration judge concluded that Reule was ineligible for withholding of removal because it involved a "more stringent standard" than asylum and thus if Reule was ineligible for asylum, it necessarily followed that he could not establish eligibility for withholding of removal. The immigration judge also concluded that Reule was ineligible for relief under the Convention Against Torture because the immigration judge found that there was "no evidence . . . that the government of Nepal would seek to harm [Reule or] consent to or acquiesce to his torture or harm in any significant manner."

Reule appealed to the board, and the board dismissed his appeal. The board agreed that Reule failed to establish past persecution because "the cumulative effect of the persecutory acts alleged . . . [did] not rise to the level of persecution." The board concluded that Reule failed to show that the attack he suffered, "which did not require hospitalization, was sufficiently severe." Similarly, the board concluded that the threats Reule claimed to have received were not "sufficiently extreme."

The board also agreed that Reule failed to establish a well-founded fear of future persecution. The board noted that the incidents Reule complained of took place "in the context of a contested election campaign in 2017" that was no longer ongoing. Further, because Reule did not report the incidents to the police, the board

6

was "unable to conclude that the Nepali authorities would be unable or unwilling to protect him." The board concluded that Reule "did not present sufficient evidence to show that the Nepal[i] government itself [was] in collusion with the Maoists or would be unable or unwilling to protect him." Moreover, the board agreed that the fact that Reule's family had remained in Nepal unharmed "substantially undermine[d] the objective reasonableness of [Reule's] fear."

Because Reule could not establish eligibility for asylum, the board concluded that he was also unable to demonstrate eligibility for withholding of removal. Finally, the board concluded that Reule was ineligible for relief under the Convention Against Torture because he had not shown that he would be subjected to torture "inflicted by or at the instigation of or with the consent or acquiescence" of a public official.

Reule timely petitioned for review of the board's decision.

## STANDARD OF REVIEW

"When the [board] issues a decision, we review only that decision, except to the extent the [board] expressly adopts the [immigration judge]'s decision." Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007). "[L]egal determinations are reviewed de novo." Id. "However, any factual determinations are reviewed under the substantial evidence test, and we 'must affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record

considered as a whole.'"  Id. (citation omitted).  "That means a finding of fact will be reversed 'only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal.'"  Id. (citation omitted).  Issues not reached by the board are not properly before us.  See id. (refusing to address contention that the immigration judge erred in finding lack of past persecution "because the [immigration judge]'s finding was not adopted by the [board] in its decision and therefore [did] not form any part of the order . . . under review").

## DISCUSSION

Reule raises three issues on appeal.  First, he argues that the board erred in concluding that he failed to establish past persecution.  Second, he argues that the board erred in concluding that he failed to establish a well-founded fear of future persecution.  Finally, he argues that the board erred in concluding that he failed to establish eligibility for relief under the Convention Against Torture.

*Past Persecution*

The board concluded that Reule failed to establish past persecution because the cumulative effect of the acts he alleged did not rise to the level of persecution.  Notably, the board concluded that Reule failed to show that the attack he suffered was "sufficiently severe."  Reule argues that the board "failed to take into consideration the circumstances under which [he] was beaten."  He argues that,

8

"[w]hile persecution is an extreme concept[,] forcing someone by beating them with a stick for an hour to give up their political beliefs far exceeds mere harassment."

Persecution is an "extreme concept that does not include every sort of treatment that our society regards as offensive." Ali v. U.S. Att'y Gen., 931 F.3d 1327, 1334 (11th Cir. 2019) (citation omitted). "Minor physical abuse and brief detentions do not amount to persecution." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009). "At the end of the day, however, what constitutes persecution is determined by the 'totality of the circumstances on a case-by-case basis.'" Ali, 931 F.3d at 1334 (citation omitted).

In other cases, we determined that incidents seemingly more severe than what happened to Reule did not rise to the level of persecution, even though the victims were engaged in political activities. See, e.g., Djonda v. U.S. Att'y Gen., 514 F.3d 1168 (11th Cir. 2008). In Djonda, the petitioner was arrested for participating in a meeting at his university. Id. at 1171. On the way to the police station, the police discovered that the petitioner was a member of an opposition political party and beat him. Id. "When [he] arrived at the police station, he was ordered to disrobe and was beaten with a belt and kicked." Id. He was released approximately thirty-six hours after his arrest, and his brother took him to the hospital, where he stayed for two days. Id. The medical records from his stay stated that he was "covered with blood" when he arrived and that he had "multiple scratches, mostly around his neck and

9

knees, and multiple muscle bruises." Id. However, the immigration judge concluded that the petitioner's incident "did not amount to past persecution." Id. at 1173. The board agreed, concluding that the petitioner "had not suffered past persecution because his detention was brief and he only suffered minor scratches and bruises." Id. We denied the petition for review, noting that the petitioner's medical documents constituted substantial evidence in favor of the board's finding that the petitioner had suffered only a "minor beating." Id. at 1174. In another case, we agreed with the board that the petitioner had failed to establish past persecution where he "testified that he was arrested while participating in a student demonstration, interrogated and beaten for five hours, and detained for four days, but [he] did not prove that he suffered any physical harm." Kazemzadeh, 577 F.3d at 1353.

Based on Djonda and Kazemzadeh, we agree with the board that Reule failed to establish past persecution. On their own, neither the attack Reule suffered nor the threats made to him and his family were severe enough to rise to the level of persecution. Even considering all of Reule's allegations cumulatively, the harassment he suffered was not sufficiently extreme. Accordingly, we agree with the board's conclusion that Reule failed to establish past persecution.

*Well-Founded Fear of Future Persecution*

The board also concluded that Reule failed to establish a well-founded fear of future persecution because he did not demonstrate that the Nepali government would

10

be unable or unwilling to protect him.  Reule argues that the board failed to consider all the evidence.  For instance, he claims that he presented "background evidence" showing that "Maoists ha[d] merged and taken control of the Nepali Government and that Nepali Congress members [we]re being killed."  He asserts that he was "not required to risk his own life to make a report to the police to be eligible for asylum." He also argues there was no basis for the board to state that he would be safe in Nepal because his family members were safe.  He notes that he testified about his brother having problems with Maoists and that, although his family members may have been Nepali Congress members, there was no evidence that they were "actively campaigning" as Reule had been.

An applicant for asylum must show that he is unable to avail himself of the protection of his home country.  Lopez, 504 F.3d at 1345.  "Although the failure to report persecution to local government authorities generally is fatal to an asylum claim," such a failure is "excused where the petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect [him], and for that reason []he could not rely on them."  Id.

We agree with the board that Reule failed to convincingly demonstrate that the Nepali government would be unable or unwilling to protect him.  The record reflects that Reule relocated to other places in Nepal without incident and that members of his family—who also supported the Nepali Congress Party—were able

11

to safely remain in Nepal.  To the extent Reule argues that the board failed to address all of his evidence, we see no error.  "[I]t is well established that 'the [immigration judge] and the [board] need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented'; they need only 'consider the issues raised and announce their decision in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted.'"  Cole v. U.S. Att'y Gen., 712 F.3d 517, 534 (11th Cir. 2013) (citation omitted).  Here, the board's decision reflects sufficiently reasoned consideration.  Indeed, the board's decision was far from being "so fundamentally incomplete that a review of legal and factual determinations would be quixotic."  See Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015).

Even so, the unaddressed evidence Reule points to does not further his case. The Department of State's country report for Nepal noted that "corruption remained a problem at all levels of government," but it also noted that "[c]ivilian authorities maintained effective control of security forces" and that "[t]he government routinely investigated and held accountable those officials and security forces accused of committing ongoing violations of the law."  The country report does not convincingly demonstrate that the Nepali government would be unwilling or unable to protect Reule; if anything, it suggests the opposite.  Accordingly, we agree with the board's conclusion that Reule failed to establish a well-founded fear of future

persecution.  We also agree with the board that, because Reule failed to establish a well-founded fear of future persecution for purposes of asylum, he was necessarily ineligible for withholding of removal.  See, e.g., Djonda, 514 F.3d at 1177 ("Because Djonda has failed to establish his eligibility for asylum, he has necessarily failed to meet the higher standard for withholding of removal.").

*Relief under the Convention Against Torture*

The board concluded that Reule failed to establish eligibility for relief under the Convention Against Torture because he had not shown that he would be subjected to torture "inflicted by or at the instigation of or with the consent or acquiescence" of a public official.  Reule argues that the board did not give "separate consideration" to his claim.  He asserts that the board "ignored all the facts that [he] was beaten by a stick by the Maoists for an hour due to his political beliefs" and "did not consider that the Maoists have now merged with the Communists and are now in control of the Nepali Government and that member[s] of the Nepali Congress Party have been killed in Nepal."

An applicant for relief under the Convention Against Torture must show that the alleged harm they expect to suffer would be "inflicted by or at the instigation of" a public official or would be permitted to occur with a public official's "consent or acquiescence."  See 8 C.F.R. § 208.18(a)(1); see also Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1241 (11th Cir. 2004).  We agree with the board that Reule

13

failed to show that he would be subjected to torture inflicted, instigated, consented to, or acquiesced to by a public official.  Reule never alleged that a public official was involved in the harassment he suffered—he only generally alleged that the culprits were Maoists.  The sole fact that the Maoist Party may now be in charge of the Nepali government is insufficient to support a finding that any future harm Reule could suffer would be at the instigation or acquiescence of a public official.  See Dahal v. Barr, 931 F.3d 15, 20, 23 (1st Cir. 2019) (Souter, J.) (concluding that petitioner had failed to show that the "[Nepali] government has continually turned a blind eye to the victims of Maoist torture," even though the record established that "Maoists are now active participants in the government and have held key leadership posts"); see also Malla v. U.S. Att'y Gen., 779 F. App'x 644, 649 (11th Cir. 2019) (unpublished) ("Because Malla failed to demonstrate that the Nepal[i] government was unable or unwilling to protect him from private actors, the [board] reasonably concluded that Malla failed to demonstrate that it was more likely than not that the Nepal[i] government would consent to or acquiesce in his torture.").  Again, the Department of State's country report for Nepal noted that "[t]he government routinely investigated and held accountable those officials and security forces accused of committing ongoing violations of the law."  Such evidence suggests the lack of government involvement in any torture attributable to Maoists, and the board was entitled to rely on it to the extent it did.  See Reyes-Sanchez, 369 F.3d at 1243

14

(noting that the board is entitled to rely "heavily" on Department of State country reports).

**PETITION DENIED.**